(No. 68735.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. LOUIS H. BROWN, JR., Appellant.

*Opinion filed April 18, 1990.*

Daniel M. Kirwan, Deputy Defender, and Larry R. Wells, Assistant Defender, of the Office of the State Appellate Defender, of Mount Vernon, for appellant.

Neil F. Hartigan, Attorney General, of Springfield, and John Baricevic, State's Attorney, of Belleville (Kenneth R. Boyle, Stephen E. Norris and Raymond F. Buckley, of the Office of the State's Attorneys Appellate

Prosecutor, of Mount Vernon, of counsel), for the People.

JUSTICE RYAN delivered the opinion of the court:

Defendant, Louis H. Brown, Jr., was charged by indictment in the circuit court of St. Clair County with unlawful use of weapons in that he knowingly possessed a grenade which contained an explosive substance. Before trial, defendant filed a motion to suppress statements made during two interrogations held on August 19, 1986, contending that the law enforcement agents ignored his request for attorney assistance. The trial court granted the motion, finding that, although defendant was properly advised of his *Miranda* rights, any statements made after he requested counsel were inadmissible. The State appealed from the portion of the order suppressing statements made at the second meeting. (107 Ill. 2d R. 604(a)(1).) On appeal, the appellate court, with one justice dissenting, in a Rule 23 order (107 Ill. 2d R. 23) reversed, holding that defendant was not in custody when the statements were made and therefore the questioning did not violate the rules established in *Miranda v. Arizona* (1966), 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602. (181 Ill. App. 3d 1123 (unpublished order under Supreme Court Rule 23).) We granted defendant's petition for leave to appeal (107 Ill. 2d R. 315).

The issue presented is whether defendant was in custody at the second meeting, which was held shortly after he had been allowed to leave a custodial interrogation for a limited purpose and after he had informed the officers that he would return for further questioning. We hold that the trial court's finding that defendant was in custody within the meaning of *Miranda* at the second meeting is not against the manifest weight of the evidence. Therefore, any statements which were made after his request for attorney assistance were properly sup-

pressed. We reverse the appellate court and remand the cause to the circuit court for further proceedings.

On August 7, 1986, employees at Metro Self Storage Company conducted an inventory of a storage bin defendant rented in preparation for an auction of the property to pay past due rent. During the inventory, the employees found a military ammunition box which contained a hand grenade wrapped in plastic and canvas. The discovery was reported to the police, who came and confiscated the grenade and later had it detonated. On August 19, 1986, defendant went to the office of Metro Self Storage Company's attorney and part-owner, Vincent Lopinot, to discuss the past due rent, unaware that the employees had found a grenade. One of Lopinot's employees informed the police that defendant was at the offices. While defendant waited to see Lopinot, three police officers approached defendant and informed him he was wanted in connection with an unlawful use of weapons charge. They searched defendant, took the contents of his pockets, handcuffed him and took him to the police station. These officers were directed to bring defendant to the station by Detective Sergeant Gary Brewer, who was acting upon the request of Agent William Lukowski of the Department of the Treasury, Bureau of Alcohol, Tobacco and Firearms (ATF). Agent Lukowski wanted to meet with the defendant to discuss his possession of the grenade.

At the police station, defendant asked Brewer why he was being arrested, to which Brewer replied that it was because of an item found in his storage bin. Defendant then stated that it was a hand grenade a friend had given him. Defendant was also told that he was being held for an agent of the ATF. The arresting officer filled out an arrest card and defendant was taken to an interrogation room. Earlier, Brewer had phoned Lukowski

and informed him that defendant had been brought to the station and would be held for the agent.

In the interrogation room Lukowski questioned defendant in Brewer's presence and with another officer stationed at the door. Defendant was first read his rights under *Miranda v. Arizona* (1966), 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, and he signed a form acknowledging that his rights had been read to him, but he refused to sign a form waiving these rights. Instead, defendant testified, he requested assistance of counsel and Lukowski responded that one would not be provided to him because he was not under arrest and that he only wanted to ask a few questions, after which defendant could leave. A discussion occurred, during which Lukowski made notes of what defendant said and read portions of them back to him for verification of their accuracy. At one point in the questioning, defendant requested to go to the bathroom and was permitted, though a police officer accompanied him into the bathroom and back to the interrogation room.

Lukowski testified that he informed defendant that he would not be placed under Federal arrest at that time. He further testified that defendant was very rational and of above normal intelligence and though defendant did discuss with him matters concerning the grenade he declined to make a "formal, written, signed, sworn statement." During the interview defendant admitted that the grenade was in his storage facility and explained how he had acquired it and where it had been over a period of years.

After talking for over 30 minutes defendant informed the officers that he was on his lunch hour. He said he would like to inform his employer of his whereabouts and to ask him for the afternoon off. He stated that if allowed to do this he would return to Lukowski's office at the ATF's headquarters. Lukowski consented to this

and the questioning was ended with the two agreeing to a specified time at which they would meet. A police officer then returned defendant to his automobile, where defendant observed that the car had been thoroughly searched.

Defendant arrived at Lukowski's office between one and two hours later, after telephoning to say he would be late. Lukowski, accompanied by another agent, brought him into an office where defendant was read his *Miranda* rights. At this meeting, defendant refused to sign either the acknowledgement or the waiver form. Although defendant had been informed of his *"Miranda"* rights, Lukowski told him he was not under arrest and was not entitled to appointed counsel. A discussion occurred regarding the grenade during which defendant made incriminating statements. After approximately 20 minutes, Lukowski, allegedly angry that defendant would not sign the form and had requested a lawyer, told defendant that he was "free to leave."

The Federal government did not file criminal charges against defendant; however, on April 3, 1987, the State of Illinois charged defendant by indictment in the circuit court of St. Clair County with the offense of unlawful use of weapons. (Ill. Rev. Stat. 1985, ch. 38, par. 24—1(a)(7).) Defendant filed on June 25, 1987, a motion to suppress the statements which he made on August 19, 1986. After hearing testimony, the trial court granted the motion. The judge found that after defendant had been read his rights he requested an attorney. Lukowski advised the defendant that an attorney would not be appointed because he was not under arrest, even though the statement of rights which defendant signed indicated that one would be appointed. The trial court's order also stated that defendant understood that by not signing the waiver form he was not waiving any rights and therefore his statements would not be used against him.

Defendant responded to Lukowski's questions after he was informed that he would be allowed to return to work if he answered them. The court concluded that Lukowski had a duty to stop questioning after the request for counsel had been made and, because there was no affirmative showing that defendant voluntarily waived any of his rights, the statements made should be suppressed.

The State appealed that portion of the order which suppressed statements made during the afternoon questioning at Lukowski's office. The State did not contend that defendant voluntarily waived his right to remain silent when he made the incriminating statements (see *Miranda*, 384 U.S. at 475, 16 L. Ed. 2d at 724, 86 S. Ct. at 1628 (State has burden of establishing defendant knowingly and intelligently waived his privilege against self-incrimination)), instead it argued that *Miranda* protections did not attach because defendant was not in custody.

A divided appellate court reversed, agreeing with the State that defendant was not in custody during the meeting. In support of this conclusion, the appellate court noted that the agent did not object when defendant called to say he would be late; defendant provided his own transportation to the office; upon his arrival he was asked to sit in the foyer and wait for the agent; and defendant was not searched or handcuffed. Moreover, during the interview defendant was told that he would not be arrested at that time and did not need counsel since he was not being charged with a crime. The court also found persuasive Lukowski's testimony that he did not intend to arrest defendant even if he had not shown up in the afternoon. The fact that *Miranda* rights were read to defendant did not mandate a different result because Lukowski testified that standard procedure when questioning someone, regardless of whether they were in custody, required a reading of the rights. Also, the court

noted that the statements at the first meeting were not the result of coercion and were thus excluded due to a *Miranda* violation and not because of a constitutional violation. The court concluded that in such a circumstance the earlier *Miranda* violation does not taint subsequent voluntary statements made in a noncustodial interrogation. (See *Oregon v. Elstad* (1985), 470 U.S. 298, 309, 84 L. Ed. 2d 222, 232, 105 S. Ct. 1285, 1293 (if errors are made in administering *Miranda*, they should not breed the same irremediable consequences as police infringement of the fifth amendment; though the unwarned admission must be suppressed, the admissibility of subsequent statements turns on whether they are knowingly and voluntarily made).) The dissenting justice considered the second interrogation custodial because he believed defendant's agreement to return to Lukowski's office was compelled as a condition for his being allowed to leave temporarily and a reasonable person would have felt that his freedom of movement had been significantly curtailed by having no real alternative but to return to the office.

This case is unlike *Edwards v. Arizona* (1981), 451 U.S. 477, 68 L. Ed. 2d 378, 101 S. Ct. 1880, where a defendant was questioned while in custody, requested and was denied attorney assistance, retained in custody and later questioned again. In *Edwards*, the Supreme Court articulated the rule that once a defendant invokes his right to have counsel present during a custodial interrogation, questioning must cease until counsel is present. However, in the present case, after the first custodial interrogation, defendant was released for a limited purpose and then questioned again. Arguably, the police were not bound by the requirement that before subsequently speaking with the defendant they must have honored his previous request to have an attorney present. It is unnecessary to determine whether *Ed-*

*wards* applies to this situation. If the second meeting was custodial, the statements were properly suppressed because the agent denied the defendant the protections guaranteed by *Miranda*. In light of our holding that the second interrogation was custodial, we also need not determine whether the officer's earlier *Miranda*-violative interrogation tainted statements made at the second meeting.

The Supreme Court held in *Miranda* that an accused has the right to have counsel present during custodial interrogation and if he makes such a request the interrogation must stop. (*Miranda*, 384 U.S. at 469, 474, 16 L. Ed. 2d at 721, 723, 86 S. Ct. at 1625, 1627-28.) Custodial interrogation means questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom in any significant way. (384 U.S. at 444, 16 L. Ed. 2d at 706, 86 S. Ct. at 1612.) The ultimate inquiry is whether there is a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest. (*California v. Beheler* (1983), 463 U.S. 1121, 1125, 77 L. Ed. 2d 1275, 1279, 103 S. Ct. 3517, 3520.) Although what constitutes police custody is not always self-evident, the Court in *Miranda* was concerned with interrogations that take place in a police-dominated environment containing "inherently compelling pressures which work to undermine the individual's will to resist and to compel him to speak where he would not otherwise do so freely." *Miranda*, 384 U.S. at 467, 16 L. Ed. 2d at 719, 86 S. Ct. at 1624; see also *Berkemer v. McCarty* (1984), 468 U.S. 420, 437-38, 82 L. Ed. 2d 317, 333, 104 S. Ct. 3138, 3149.

The determination of whether an interrogation is custodial should focus on all of the circumstances surrounding the questioning, such as: the location, length, mood and mode of the interrogation; the number of police offi-

cers present; any indicia of formal arrest or evidence of restraint; the intentions of the officers; and the extent of knowledge of the officers and the focus of their investigation. (See *People v. Lucas* (1989), 132 Ill. 2d 399, 417.) The trial court must examine and weigh these factors, along with the credibility of the witnesses. It then must make an objective determination as to what a reasonable man, innocent of any crime, would perceive if he were in defendant's position. (*People v. Lucas* (1989), 132 Ill. 2d 399, 417-18.) As a result of this process, courts have understandably arrived at contradictory conclusions regarding the effect of certain facts. (See, *e.g., People v. Wipfler* (1977), 68 Ill. 2d 158, 171 (a custodial situation is not created merely by the giving of *Miranda* warnings); *People v. Townes* (1982), 91 Ill. 2d 32, 37 (defendant was consistently read his rights, which could indicate to a reasonable person that he was in custody).) However, when reviewing the trial court's ruling on a motion to suppress, a court of review should not disturb the court's finding unless it is manifestly erroneous. *People v. Garcia* (1983), 97 Ill. 2d 58, 74; *People v. Reynolds* (1983), 94 Ill. 2d 160, 165.

The trial court below did not make separate findings as to the two meetings when it applied the criteria for determining custody to these facts. Nevertheless, the judge did hear all the evidence, the record fully established what occurred at each meeting, and, though the two events were closely related, distinctions were made by the parties as to the custodial nature of each. The judge's conclusion indicates that he thought defendant was in custody throughout the interrogations. Though more specific findings of fact would be helpful in ruling on this issue, we need not remand the matter since evidence in the record supports the trial court's conclusion. See *People v. Jones* (1984), 129 Ill. App. 3d 618, 625; *People v. Townsend* (1972), 6 Ill. App. 3d 873, 878; see

also *People v. Winters* (1983), 97 Ill. 2d 151, 158-59 (trial court's failure to make specific findings of fact on a motion to suppress an unlawful search and seizure, as required by section 114—12(e) of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1979, ch. 38, par. 114—12(e)), held not to require a remand for further proceedings).

In determining whether the second meeting was custodial, analysis should be made of both meetings and how they relate to each other because the events were so closely related and would influence the understanding of a reasonable person. The first part of our inquiry centers on the circumstances surrounding the interrogation, such as the setting, mood and number of officers present. We realize, of course, that any interview by police officers may have coercive aspects in which a person possibly could feel that he is in custody. (*California v. Beheler* (1983), 463 U.S. 1121, 1124, 77 L. Ed. 2d 1275, 1279, 103 S. Ct. 3517, 3519.) However, there is sufficient evidence in the record here to indicate to a reasonable person that the defendant was in custody. The meetings were held at law enforcement offices with at least two officers present and the defendant was not informed that he could leave if he so desired or that he was not being held.

At the first meeting, defendant was taken to an interrogation room. He was questioned by a Federal agent in the presence of a police sergeant, while another officer stood guard at the door. Similarly, the second meeting was held at a Federal law enforcement agent's office. Defendant was taken to an office and questioned by the agent in the presence of another agent. The first meeting lasted between 30 minutes and an hour and was not terminated by the officers. Rather, defendant informed them that he was on his lunch break and would like to inform his employer of his whereabouts and to

contact the person who had allegedly given him the grenade. He told the officers that if he were allowed to leave for these limited purposes he would immediately return. The officers consented to this. Defendant testified that his impression was that he was only allowed to leave because he received their permission and agreed to return for more questioning. The stipulation that defendant return for further questioning and the circumstances surrounding it indicate that it was more of an imperative than a request and contributes to the conclusion that defendant was in custody. In *United States v. Brown* (D. Mont. 1981), 531 F. Supp. 37, the defendant also had been held for a custodial interrogation. Two days later the F.B.I. called him and said they wanted to question him again. The court stated that the language used to summon defendant was more in the nature of a command than an invitation. It then noted that "[t]he nature of the language used to summon the defendant adds weight to the conclusion that the defendant was in custody." *Brown*, 531 F. Supp. at 40.

The second meeting lasted only about 20 minutes. During the interrogation, according to defendant, Lukowski was angry at the failure to get a written statement and at defendant's request for an attorney. Defendant also testified that he did not feel he could leave during the meeting. In fact, he did not leave until told by Lukowski at the end of the meeting that he was "free to leave." At no time prior to this was he told he could leave whenever he wished and Lukowski's statement that defendant was "free to leave" implies that up until that time he was not free to leave and was in fact in the custody and control of the officers.

There were strong indicia of a formal arrest when defendant was first taken to the police station. While in Lopinot's office, three officers searched and handcuffed defendant, and then took him to the police station. At

the station an arrest card was filled out. There can be little doubt that a reasonable person would feel he was in custody, and the State does not contend otherwise. Also, when defendant desired to use the bathroom an officer accompanied him and when a police officer returned him to his automobile he observed that it had been searched. Both facts indicate that he was considered a suspect subject to the control of the officers and, at least up until that point, was in their custody.

At the end of the first meeting, he was not given an unconditional leave, instead he had to return to Lukowski's office at a specified time. At the second meeting in Lukowski's office there was no necessity to subject him to the formal restraints of handcuffing or to fill out an arrest card. However, the surroundings were similar to those in which he had just been held in custody. Also, at each meeting defendant was read his rights, although he was then given conflicting signals as to their value. At the first meeting, he was asked to waive his rights to remain silent and to have an attorney present. However, when he sought to enforce these rights he was told that he did not have the right to an appointed attorney because he was not under arrest. Reasonable persons may be confused, as defendant testified he was, when asked to waive rights which they do not supposedly have. Moreover, the only indication that defendant was not under arrest is Lukowski's statement; the officers who handcuffed him and took him to the station told him he was under arrest, and he was treated at the station as an arrestee. Though courts have reasoned that a custodial situation is not created merely by the giving of *Miranda* warnings (*People v. Wipfler*, 68 Ill. 2d at 171), in this case it contributed to defendant's understanding that he was being held as a criminal suspect. At the second meeting, this admonishment concerning his *Miranda* rights was repeated. It would indeed be

confusing to be informed that one has a right to counsel and when counsel is requested to be told that you cannot have counsel because you are not in custody. Defendant testified that he felt that he was subject to the officer's control and did not feel free to leave until told so by Lukowski. This conclusion is reasonable. Defendant had just previously been in custody, he was compelled to return or else be subject to arrest, and during both interrogations he was treated the same and given the same conflicting signals regarding his rights.

Two final inquiries should be made. Consideration should be made of the officer's knowledge and the focus of his investigation when determining what a reasonable person would think, although it is unlikely that this determination will control the conclusion of whether the interrogation is custodial. (See *Oregon v. Mathiason* (1977), 429 U.S. 492, 495, 50 L. Ed. 2d 714, 719, 97 S. Ct. 711, 714 (*Miranda* warnings are not required merely because the person questioned is one whom the police suspect); *Beckwith v. United States* (1976), 425 U.S. 341, 347, 48 L. Ed. 2d 1, 8, 96 S. Ct. 1612, 1616.) Before the police officers arrested him, defendant was unaware that he was the subject of any criminal suspicion. While at the station, he became aware that he was arrested as a result of the grenade and that Federal authorities wanted to speak to him. Thus, from this point on through the afternoon he knew that he was suspected of a criminal violation and there most likely was sufficient evidence to arrest, though it later became clear that the authorities desired further information on the subject and were not necessarily going to charge the defendant. At both meetings defendant was subjected to questioning, which in large part was meant to elicit incriminating remarks relevant to the charge. This was done even though defendant had made clear that he did not want

to make a statement which could be used to incriminate him.

Our last inquiry is the officer's subjective intent as to whether or not defendant was in custody. Lukowski stated that he did not consider the defendant under arrest and would not have had him arrested if he had not shown up at the second meeting. However, in light of our analysis and the trial court's conclusion, to a reasonable man innocent of a crime the opposite conclusion is understandable. At least the trial court's finding to that effect is not against the manifest weight of the evidence.

In a number of cases where a person voluntarily came to a police station and made incriminating statements courts have held there was not a custodial interrogation. We do not believe that our ruling is inconsistent with these cases. The defendant in *California v. Beheler* (1983), 463 U.S. 1121, 77 L. Ed. 2d 1275, 103 S. Ct. 3517, phoned the police and told them about a crime in which he had participated. The police arrived at his home and found a gun in defendant's yard, after he had given his consent to the search. Later, defendant voluntarily agreed to accompany police to the station, although they specifically told him that he was not under arrest. He then gave a statement and went home. Five days later he was arrested. In *Oregon v. Mathiason* (1977), 429 U.S. 492, 50 L. Ed. 2d 714, 97 S. Ct. 711, a police officer left a note at the apartment of a criminal suspect stating that he would like to talk to him. Defendant phoned the officer and said he would meet him wherever the officer would like. Since the station was only two blocks away, defendant went there. When told that he was a suspect in a theft and there was evidence linking him to it, defendant confessed. The police then read defendant his rights and he made a taped confession, after which he was allowed to leave. In both cases the Supreme Court held that there was nothing to indicate that

defendant was taken into custody or significantly deprived of his freedom of action. The issue was raised in *People v. Wipfler* (1977), 68 Ill. 2d 158, whether defendant was under arrest when he made incriminating remarks. The police in *Wipfler* left a message with defendant's mother that they would like to talk to him about some burglaries. Defendant and the officers had a friendly relationship and later that day he went to the station. Defendant was questioned and, after changing his story regarding his knowledge, said that he would tell the truth, at which point he was given his *Miranda* rights. In finding that he was not under arrest, this court noted that there was a lack of compulsion by the officers in obtaining or retaining his presence and that prior to the questioning there was no probable cause to arrest.

Certain factors distinguish this case from *Beheler*, *Mathiason* and *Wipfler*. Unlike those cases, less than two hours before this defendant went to Lukowski's office, he had been arrested in a public place, handcuffed and forcefully brought to a police station where he was subjected to a custodial interrogation. The condition for his being allowed to leave this setting was the agreement that he return at a specified time. It is reasonable to believe that defendant felt that if he did not return he would have breached his agreement and again would be subjected to a public arrest and interrogation at anytime. Also, before the questioning at Lukowski's office, unlike the situation in *Mathiason* and *Wipfler*, defendant was aware that he was a criminal suspect and that there was sufficient evidence against him to press charges. Before this interrogation began, he was immediately read his *Miranda* rights and he was not told he was free to leave if he so desired. In addition, in this case there was the confusing contradiction of the defendant's being told he could have an attorney, yet when he requested one he

was told he was not entitled to one. Thus, evidence supports the conclusion that defendant was in custody and did not voluntarily arrive at the agent's office, rather there was compulsion on him to appear, and an important factor contributing to this is that shortly before he arrived at the office he had been held in custody.

For the reasons stated, we hold that the trial court's determination that a reasonable person, innocent of a crime, would believe he was in custody is not against the manifest weight of the evidence. The judgment of the appellate court is reversed, and the order of the circuit court is affirmed. The cause is remanded to the circuit court of St. Clair County.

*Appellate court reversed;*
*circuit court affirmed;*
*cause remanded.*