THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. MICHELLE SWISHER, Defendant-Appellee.

Fourth District   No. 4—90—0316

Opinion filed December 20, 1990.

Thomas J. Difanis, State's Attorney, of Urbana (Kenneth R. Boyle, Robert J. Biderman, and David E. Mannchen, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Anthony E. Novak, of Anthony Novak & Associates, of Urbana, for appellee.

JUSTICE McCULLOUGH delivered the opinion of the court:

On January 14, 1990, Michelle Swisher, defendant, was charged with unlawful possession of cannabis in violation of section 4(b) of the

Cannabis Control Act (Ill. Rev. Stat. 1989, ch. 56½, par. 704(b)) and with unlawful possession of a controlled substance in violation of section 402(b) of the Controlled Substances Act (Ill. Rev. Stat. 1989, ch. 56½, par. 1402(b)). The defendant filed a motion to quash the arrest and suppress the evidence. Following a hearing on that motion on April 27, 1990, the trial court granted the defendant's motion to suppress. The People appeal, and the issue before this court is whether the trial court erred in finding that the police had made an improper *Terry*-type stop when they walked up to a parked car in which they had seen suspicious movement.

The witnesses presented at the hearing on the motion to suppress were Urbana police officers Baird and Royal. Officers Baird and Royal were on routine patrol in the City of Havana in a police vehicle. While on patrol, Officer Baird, as the driver, exited an alley when Officer Royal stated he saw a person in a car parked in a parking lot "duck down." After the officers went by, Officer Royal turned around and saw the "person come back up." The officers pulled into the parking lot, shut the lights off and approached the vehicle on foot. Officer Royal went to the passenger side, Officer Baird to the driver's side, and they simultaneously turned their flashlights on to check the occupant of the vehicle. Baird at the same time knocked on the driver's side window and asked for identification and Royal opened the passenger door and ordered the defendant out. After the defendant exited, Baird saw a small mirror, a white powdery substance, and a "baggy [*sic*]" containing a white powdery substance with a twist tie in the vehicle. Officer Royal testified he saw the white mirror with a white powder on it "as soon as I turned the light on." The car was parked near a tavern, "directly north of the tavern." Other cars were parked in the lot, and the tavern, as well as the nearby corner cafe, were open for business.

The officers did not activate any emergency lights or siren or engage in any other conduct to effectuate a stop of the defendant.

On cross-examination, when asked the purpose of an officer on each side of the car, Baird stated "[i]n the event there was more than one occupant of the car, we didn't want them leaving until we found out what they were doing."

The trial court found that "the leaning forward or slinking down behavior *** was the crux of the officers' suspicion." The trial court determined there had been a stop when "the officers approached the car and had determined to place themselves on each side of the car so that certain egress was effectively blocked and the identification was asked for at the same time. I think there was a stop, and I think

based on the case law and my feeling about the nature of the conduct observed here, that there simply wasn't a reasonable articulable suspicion that rose to the level that permitted an investigatory stop."

Without the necessity of citation, it is clear that a trial court's ruling on a motion to suppress will not be disturbed unless it is against the manifest weight of the evidence.

■■■ This court adopts the following statements made by the Second District Appellate Court in *People v. Clark* (1989), 185 Ill. App. 3d 231, 236-37, 541 N.E.2d 199, 202-03:

"The purpose of the fourth amendment is not to eliminate all contact between the police and citizens, and as long as the person to whom questions are put remains free to disregard the questions and walk away, there is no intrusion upon that person's liberty or privacy which would require some particularized and objective justification. (*Mendenhall*, 446 U.S. at 553-54, 64 L. Ed. 2d at 509, 100 S. Ct. at 1876.) A person has been seized within the meaning of the fourth amendment only when, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave. *Royer*, 460 U.S. at 501-02, 75 L. Ed. 2d at 239, 103 S. Ct. at 1326; *Mendenhall*, 446 U.S. at 554, 64 L. Ed. 2d at 509, 100 S. Ct. at 1877.

The fourth amendment is not implicated where the police merely approach an individual on the street or in a public place and ask him if he is willing to answer questions, or put questions to him if the person is willing to listen. (*Royer*, 460 U.S. at 497, 75 L. Ed. 2d at 236, 103 S. Ct. at 1324.) The fact that a police officer identifies himself as such does not, without more, convert the encounter into a seizure. (*Royer*, 460 U.S. at 497, 75 L. Ed. 2d at 236, 103 S. Ct. at 1324.) A person approached by the police need not listen to or answer any questions and may go on his way, and his refusal to listen to or answer questions does not, without more, furnish reasonable, objective grounds to detain him, even momentarily. (*Royer*, 460 U.S. at 497-98, 75 L. Ed. 2d at 236, 103 S. Ct. at 1324.) Examples of circumstances which might indicate a seizure would be the threatening presence of several police officers, the display of a weapon by an officer, some physical touching of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled. (*Mendenhall*, 446 U.S. at 554, 64 L. Ed. 2d at 509, 100 S. Ct. at 1877.) ***
***

Professor Wayne R. LaFave in his respected treatise on the fourth amendment states that 'the mere approach and questioning of such persons does not constitute a seizure,' and '[t]he result is not otherwise when the officer utilizes some generally accepted means of gaining the attention of the vehicle occupant or encouraging him to eliminate any barrier to conversation' such as the officer tapping on the window. (3 W. LaFave, Search & Seizure §9.2(h), at 415-16 (2d ed. 1987).) 'A request that the suspect open the door or roll down the window would seem equally permissible, but the same would not be true of an order that he do so.' 3 W. LaFave, Search & Seizure §9.2(h), at 416 (2d ed. 1987)."

Per the reasoning in *Clark* and *United States v. Mendenhall* (1980), 446 U.S. 544, 64 L. Ed. 2d 497, 100 S. Ct. 1870, the trial court was correct in determining there was a stop. See also *People v. Long* (1983), 99 Ill. 2d 219, 457 N.E.2d 1252; *People v. Mills* (1983), 115 Ill. App. 3d 809, 450 N.E.2d 935.

■ A peace officer, after having identified himself as such, may stop any person in a public place for a reasonable period of time when the officer reasonably infers from the circumstances that the person is committing, is about to commit, or has committed an offense as defined in the Code of Criminal Procedure of 1963 (Code) and may demand the name and address of the person and an explanation of his actions. (Ill. Rev. Stat. 1989, ch. 38, par. 101—1 *et seq.*) The detention and temporary questioning is to be conducted in the vicinity of where the person is stopped. Ill. Rev. Stat. 1989, ch. 38, par. 107—14.

In this case, the only evidence presented to the court concerning whether the defendant was committing or was about to commit or has committed an offense was the testimony by Officer Royal that he saw the defendant duck down or make a rapid movement and lean forward in the vehicle. The trial court found "the leaning forward or slinking down behavior could still be an innocent act."

■ ■ Section 107—14 of the Code is, in substance, similar to the Supreme Court's reasoning in *Terry v. Ohio* (1968), 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868. Per *Terry*, a police officer under appropriate circumstances may briefly detain a person for investigatory purposes. The trial court, in determining the merits of the motion to suppress, may look at all of the facts and circumstances, and even those which might constitute innocent behavior, if viewed separately, may provide reasonable suspicion justifying a stop when considered in their entirety. No factors such as lateness of the hour, whether the location was a high-crime area, or whether the car or its location was

otherwise suspicious were presented. The only evidence is the testimony that Officer Royal saw the defendant duck down in the car. The trial court's finding that the defendant's actions as testified to by Officer Royal did not show sufficient specific, articulable facts to authorize the officers' intrusion is correct. Its decision was not against the manifest weight of the evidence.

The order of the Champaign County circuit court is affirmed.

Affirmed.

SPITZ and KNECHT, JJ., concur.