THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. STANLEY ROUNDTREE *et al.*, Defendants-Appellees (Dawn R. Hedden, Defendant).

Fourth District   No. 4—92—0152

Opinion filed February 4, 1993.

Thomas J. Difanis, State's Attorney, of Urbana (Norbert J. Goetten, Robert J. Biderman, and Timothy J. Londrigan, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Daniel D. Yuhas and David P. Bergschneider, both of State Appellate Defender's Office, of Springfield, for appellees.

JUSTICE KNECHT delivered the opinion of the court:

The State appeals from the Champaign County circuit court's grant of defendants' motion to suppress evidence seized during an automobile stop. It argues reasonable and articulable facts existed to justify the officers' stop of the suspect vehicle. We disagree and affirm.

On November 2, 1991, City of Champaign police officer Rob Morris was on routine traffic patrol with his partner, Officer Tom Walton. They drove a marked police vehicle and were in uniform. While on patrol they found themselves behind the vehicle in which defendants Stanley Roundtree, Toby Huber, and Dawn Hedden were travelling. According to Morris' testimony at the suppression hearing, Huber, the backseat passenger, looked back toward the squad car several times and appeared very nervous. Morris responded to Huber's actions by radioing his dispatcher and requesting information through the Metropolitan Computer-Assisted Dispatch (METCAD) about the license plate and registration of the suspect vehicle.

After following the suspect for approximately four blocks, the dispatcher responded the information received from METCAD was returned as "no record on file." The officers then stopped the vehicle to investigate whether it was properly owned and registered. Hedden was the driver and Roundtree was the passenger in the front seat.

A brief search of the vehicle occurred after the officers noted several furtive gestures by Huber within the vehicle. Huber reportedly had tried to reach over and into a bag located to his left within the vehicle. Officer Morris saw a weapon within the bag, drew his service revolver and confiscated the bag.

Morris conceded that before they stopped the vehicle they had not observed the occupants in the vehicle break any laws or municipal or-

dinances. Their sole reason for stopping the vehicle was the information received from METCAD indicating no record on file regarding the registration of the suspect vehicle.

Morris testified he frequently checked registrations and driver's license of vehicles in the performance of his duties on traffic patrol. He performed these checks by requesting information from METCAD through his police dispatcher. Morris indicated problems often occur with the speed in which this information is relayed to him and sometimes the system goes down. However, he opined it was an effective tool which was reasonably relied on by him in the course of his professional responsibilities to evaluate whether to arrest or issue traffic citations to individuals.

Morris also indicated the system has been reliable and accurate in obtaining information about the status of an individual's license plate or registration. When asked what "no record on file" indicated, Morris replied:

> "It could mean several things. It could mean that the plates are very new, and it has not gone through the system yet. It could mean that the plates are very old, and has—the system has purged them. We found plates that are very old with stolen stickers pasted or taped on, and various other problems."

Morris also relied on the information received from METCAD to determine whether the individual had paid for registration, the vehicle was stolen, whether warrants or other information concerning the owner of the vehicle existed, and the status of the owner's driver's license. He relied on this information to decide whether to issue someone a citation for having no valid registration. During cross-examination, Morris indicated the message "no record on file" would not be used if the license plate was registered to a different vehicle than that on which it was displayed.

The trial judge granted defendants' motion to suppress evidence seized from the vehicle during the traffic stop, stating:

> "The heart of the difficulty in analysis is a dearth of facts presented from which the Court could conclude that the officer could reasonably infer from the circumstances presented, that an offense was involved. *** Failing to be entered into the computer is not an offense in the State. The officer himself explained that having no record on file could mean several things that bear no relation to unlawful conduct. *** The record is devoid of circumstances that from which the officer might infer that a status of 'no record on file' with METCAD is a circumstance permitting an inference relating to criminal conduct."

The State contends the testimony at the suppression hearing established reasonable and articulable facts to justify the arresting officers' stop of defendants' vehicle.

Section 107—14 of the Code of Criminal Procedure of 1963 authorizes law enforcement officers to detain a person in a public place for a reasonable period when the officer reasonably infers from the circumstances the person is committing or is about to commit an offense. Ill. Rev. Stat. 1991, ch. 38, par. 107—14.

■■ Officers may stop a vehicle and detain the driver only where there is at a minimum articulable and reasonable suspicion the driver is unlicensed, the vehicle is unlicensed or unregistered, or the vehicle or the driver is otherwise subject to seizure for violating the law. *Delaware v. Prouse* (1979), 440 U.S. 648, 663, 59 L. Ed. 2d 660, 673, 99 S. Ct. 1391, 1401.

A trial judge's suppression ruling will not be reversed unless it is against the manifest weight of the evidence. (*People v. Brown* (1990), 136 Ill. 2d 116, 125, 554 N.E.2d 216, 220; *People v. Neal* (1985), 109 Ill. 2d 216, 218, 486 N.E.2d 898, 899; *People v. Gorman* (1991), 207 Ill. App. 3d 461, 468, 565 N.E.2d 1349, 1353.) The trial judge's conclusion in this case that the officers did not have a legitimate basis to stop defendants is not against the manifest weight of the evidence.

A motion to suppress evidence may be properly granted where the action which forms the basis for the stop is susceptible of innocent explanation. In *People v. Swisher* (1990), 207 Ill. App. 3d 125, 129-30, 565 N.E.2d 281, 283-84, this court concluded the suppression order was consistent with the manifest weight of the evidence where the basis for the stop was that one of the patrolling officers saw the person in the car parked in a parking lot duck down and get back up when the officers' vehicle passed.

This court reasoned the trial court may look at the circumstances in their entirety and even acts which might be characterized as innocent behavior, if viewed separately, could provide reasonable suspicion when viewing the entire circumstances. In upholding the circuit judge's conclusion that suppression was proper, the court noted the officers had not relied on added circumstances such as that the defendant's vehicle was parked in a high-crime area, it was late at night, or any other basis to view the vehicle as suspicious. *Swisher*, 207 Ill. App. 3d at 129-30, 565 N.E.2d at 283-84.

Similarly, the officers in this case were drawn to defendants' vehicle *only* because the backseat passenger was nervously looking back at the officers' vehicle. This reaction may be brought about simply by the unexpected appearance of an officer's vehicle. Nor did Huber's

action suggest the *driver* of defendants' vehicle was about to engage in unlawful activity. The officers' reason for stopping defendants' vehicle was based only on the report from METCAD that there was "no record on file." Morris testified this response does not represent illegal activity by the vehicle's owner on all occasions. The trial court concluded the record was barren of anything that explained what the METCAD dispatch meant and how the officers used it in their daily work.

■ Considering the circumstances surrounding the stop of defendants' vehicle, we conclude the trial judge's suppression of the evidence was not against the manifest weight of the evidence. The officers did not articulate why *this* METCAD message gave them a reasonable basis to conclude illegal activity was occurring, and the officers presented no added factors demonstrating a reasonable basis for concluding illegal activity was being, or was about to be, committed.

The message was no indication the vehicle was stolen, and almost no indication the vehicle was unregistered, as the vehicle did have license plates. We do not suggest a police officer could never articulate a reason to stop a vehicle under the circumstances of this case. We hold only the trial court's determination the officers failed to do so *here* was not against the manifest weight of the evidence.

Affirmed.

COOK and GREEN, JJ., concur.