THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. BUDDY MARTS, Defendant-Appellant.

First District (1st Division)   No. 1—91—2706

Opinion filed September 12, 1994.

532

Rita A. Fry, Public Defender, of Chicago (Andrea Monsees, Assistant Public Defender, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Peter Fischer, and Jon J. Walters, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE CAMPBELL delivered the opinion of the court:

Following a jury trial in the circuit court of Cook County, defendant Buddy Marts was found guilty of arson and four counts of involuntary manslaughter. The trial court entered a judgment notwithstanding the verdict on the charge of arson. However, defendant was sentenced to 10 years in the Illinois Department of Corrections on the involuntary manslaughter convictions. Defendant now appeals those convictions.

The record on appeal indicates the following facts. Defendant was charged by indictment with first degree murder, aggravated arson and arson relating to a fire at an apartment building located at 4802 N. Bernard, Chicago, Illinois, on August 31, 1988. Before trial, defendant filed motions to quash his arrest and suppress evidence, suppress statements and join related prosecutions.

The primary witnesses at the hearing on defendant's motion to quash his arrest and suppress evidence were defendant and Detective Martin Gavin of the Chicago police department's bomb and arson section. Though the witnesses offered differing accounts of the circumstances leading to defendant's arrest in this matter, some of the facts are not disputed. On January 9, 1989, Detective Gavin and Detective Wayne Micek were admitted to defendant's home, which he shared with his sister and brother-in-law. Defendant had previously spoken to Detective Gavin regarding an arson defendant claimed to have witnessed. Detective Gavin had been investigating approximately 25 fires in the area surrounding the intersection of Grand and Austin; a victim of one such fire, Ms. Collazo, had called the police claiming that defendant may have been involved in setting the fire.

After speaking at defendant's home, defendant voluntarily accompanied the detectives to the police station to look at mug shots. Defendant was taken to a glass-partitioned room by one of the officers, who then left to make a phone call. This room had a ring to secure people with handcuffs, but defendant was not handcuffed at this time. Defendant could see two officers talking out of earshot.

Defendant testified that he was informed he was under arrest for four counts of murder and arson immediately after the officers returned to the glass-partitioned room. Defendant also testified that he was not told he was under arrest until after the officers escorted him to the scene of the fire at 4802 N. Bernard "to refresh his memory."

Detective Gavin testified that he spoke with defendant in the glass-partitioned room in the presence of Detective Micek and Detective Timothy O'Meara. Detective Gavin indicated that he told

defendant of additional fires and Ms. Collazo's concern that defendant was responsible for them. According to Detective Gavin, defendant immediately broke down and said "I have a sickness, I am not well." Detective Gavin stated he believed this comment referred to defendant's mental health; at this point, Gavin did not believe defendant was free to leave. Detective Gavin then informed defendant of his constitutional rights, which defendant said he understood. According to Detective Gavin, defendant stated that he wanted to get something off his chest and then admitted setting numerous fires, including the fire relating to Ms. Collazo, giving specific incidents and addresses. Gavin testified that defendant was placed under arrest after he was informed of his constitutional rights, but later testified that he was placed under arrest after making the admissions.

The trial court denied the motion to quash, finding that probable cause existed for the police to detain and ultimately arrest defendant for the offenses charged.

Defendant also moved to suppress statements he gave to the police and the State's Attorney's office, alleging that they were coerced and that defendant's low intelligence left him unable to understand his constitutional rights or to knowingly waive them. Detective Gavin again testified, as did Detective Lawrence Poli, who participated in taking a written statement from defendant. Assistant State's Attorney Edward Schreiber testified regarding a statement he took from defendant in the presence of a court reporter and detectives. School psychologist Kevin Caines and forensic psychiatrist Gerson Kaplan gave expert testimony regarding defendant's ability to understand the meaning of the *Miranda* warnings. Defendant testified that he gave the statements because he had been struck and threatened by the police. After hearing the witnesses and argument, the trial court denied defendant's motion to suppress statements.

Defendant also moved to join this prosecution with related prosecutions of defendant based on defendant's statements. Defense counsel argued that he would seek to discredit the statements defendant made to the police by showing that when defendant was arrested, the police had already obtained a confession from Michael Gillon as to at least one of the fires to which defendant had made admissions, though Gillon apparently had not confessed to the fire at issue in this case. The trial court denied defendant's motion for joinder of the prosecutions.

During jury selection, a prospective juror told the court he had heard about "the Marts case" and had "rehashed" it with co-workers, but did not remember the names of the people who had been murdered. The venireman remembered the horror of the case because

a home that had been in his family for three generations had burned down at about the same time. The venireman also indicated that he thought he could judge the case on the evidence presented at trial and that he did not have any preconceived notions about defendant. The trial court denied defendant's motion to excuse this venireman for cause; defendant then exercised a peremptory strike to remove this venireman from the jury.

At trial, Martin Haug, who lived two houses north of the building at 4802 N. Bernard, Chicago, Illinois, on August 31, 1988, testified that he saw flames on the stairs of that building at approximately 11:30 p.m. and called the fire department. George Soto, a resident of the building on the date in question, indicated that his smoke alarm sounded approximately 15 to 20 minutes after he arrived home between 11:30 p.m. and midnight on the date in question.

Namil Kim, the owner of the building at 4802 N. Bernard, testified that the first floor of the building was occupied by businesses, while the second and third floors contained apartments. All 32 apartments were occupied in August 1988. A wooden stairway led from the alley to the second and third floors. A steel gate on the side of the stairs separated a gangway leading to the businesses on the first floor from the alley. Kim testified that this gate was locked on the night of the fire.

Kim further testified that there were two dumpsters in the alley, from which garbage was collected twice weekly. Kim indicated that some of the store owners kept cardboard boxes in the gangway pending garbage collection.

Kim testified that he received a telephone call from his alarm company at approximately midnight on August 31, 1988. Kim went to the building and found it in flames. Kim testified that he lost everything in the building to the fire.

Detective Ernest Rokosik of the Chicago police department's bomb and arson section testified as an expert on the cause and origin of fires. Detective Rokosik arrived at the scene of the fire at approximately 1 a.m., while the fire was in progress. He observed the fire, spoke to witnesses and later examined the premises in detail. Detective Rokosik found no indication of an accelerant from visual observation or from tests of a debris sample. He learned that a number of cardboard boxes and crates containing excelsior—a highly flammable substance—had been stored in the fire area. Detective Rokosik opined that the fire originated in cases and crates stored in the gangway, burned through the ceiling and travelled along a stairwell and alcove to the second and third floors.

Detective Rokosik testified that he originally classified this fire as

having an undetermined cause because he had insufficient data to classify the fire as being intentionally or accidentally set. His report found no criminal intent because he could not determine a reason for the ignition of the materials behind the stores. However, after learning of defendant's statements to the police, Detective Rokosik concluded that the fire was caused by the intentional ignition of papers and materials behind the stores.

The parties stipulated that Kum Yi, Hong Yi, Jack Kaufman and Youndsuk Kim were in good health and resided at 4802 N. Bernard on August 31, 1988. The parties also stipulated that these people were found by Chicago fire department personnel in the building in question and that these people died of carbon monoxide intoxication resulting from smoke inhalation. Two medical examiners testified that they initially listed the manner of death for these people as undetermined, but revised their opinions to homicide after receiving follow-up information in January 1989.

Detective Micek, Detective Poli and Assistant State's Attorney Schreiber all testified regarding the statements taken from defendant and the circumstances surrounding the investigation of this case. Detective Micek testified that after Detective Gavin read defendant his *Miranda* rights, Detective Micek asked about the fire at 4802 N. Bernard. According to Detective Micek, defendant said he did not know anything about that fire and was not anywhere near the scene when it occurred. Detective Micek testified that he reminded defendant that he had seen defendant in the area the day after the fire, whereupon defendant admitted setting the fire at 4802 N. Bernard. Detective Micek added that defendant went to 4802 N. Bernard with Detectives Micek, Gavin and O'Meara, where defendant showed the police how the fire started and spread.

Detective Poli testified that he had heard from fire and bomb section detectives that defendant had said he accidentally set the fire at 4802 N. Bernard. Detective Micek testified that he never told Poli that the fire was an accident. Detective Poli testified that he never heard defendant say that he accidentally set the fire at 4802 N. Bernard.

The record indicates that the statements defendant made to Detective Micek, Detective Poli and Assistant State's Attorney Schreiber are largely similar in substance, though none contains every element of the account that follows. Defendant indicated that he left his home on August 31, 1988, after an argument with his sister. Defendant walked to the area near the intersection of St. Louis and Lawrence, then went to a park, where he smoked a couple of joints. Defendant eventually found himself at the rear of the

building at 4802 N. Bernard, where he saw a garbage can. Defendant started a fire in the garbage can with matches, but the fire did not burn long. Defendant climbed over the gates into the gangway and went to the bathroom under a stairway. Defendant then walked further into the gangway, had thoughts of fire, opened one of the dumpsters and lit the papers and boxes therein. Defendant also indicated he wanted to keep warm. Defendant left after the fire began to spread from the dumpster to other materials and—depending on which statement is examined—to the ceiling and stairs. One statement indicates defendant slept under a bench in a nearby park; another indicates he spent the night at the Salvation Army. The statements indicate defendant had breakfast at the Salvation Army the following morning.

Following closing argument, jury instruction and deliberations, defendant was found guilty of arson and four counts of involuntary manslaughter. The trial court later entered a judgment notwithstanding the verdict on the charge of arson, holding that the garbage lit by defendant could not be considered real property. Defendant received a 10-year sentence for involuntary manslaughter and now appeals.

## I

Initially, defendant claims that the trial court erred in denying his motion to quash the arrest and suppress evidence because the police lacked probable cause to arrest him. The issue of whether probable cause exists is a commonsense, practical question to be determined upon examination of the totality of the circumstances presented. (*Illinois v. Gates* (1983), 462 U.S. 213, 76 L. Ed. 2d 527, 103 S. Ct. 2317.) Probable cause exists if a police officer has knowledge of facts which would lead a reasonable person to believe that a crime has been committed, and that it was committed by the defendant. (*People v. Neal* (1985), 111 Ill. 2d 180, 193, 489 N.E.2d 845, 849-50.) Only where a finding of probable cause constitutes manifest error can a reviewing court reverse that ruling. (*People v. Matthews* (1985), 137 Ill. App. 3d 870, 874, 485 N.E.2d 403, 407.) As the trial court resolved the conflicting testimony against defendant, this court will analyze the issue using the testimony of the State's witnesses and the uncontroverted testimony of defendant's witnesses. See *People v. House* (1990), 141 Ill. 2d 323, 370, 566 N.E.2d 259, 280 (considering voluntariness of confession).

In this case, the parties dispute whether defendant was placed under arrest before he made incriminating statements. In determining whether an arrest has occurred, the question is whether a reasonable innocent person in the defendant's situation would have

considered himself free to leave. (See *People v. Reynolds* (1983), 94 Ill. 2d 160, 165, 445 N.E.2d 766, 768; see also *People v. Wipfler* (1977), 68 Ill. 2d 158, 166, 368 N.E.2d 870, 872-73.) A defendant's belief that he was not free to leave is not determinative of the issue. (*People v. Woodson* (1991), 220 Ill. App. 3d 865, 873, 581 N.E.2d 320, 325.) The fact that questioning took place in a police station is not by itself sufficient to convert the questioning into an arrest. (*People v. Matthews* (1990), 205 Ill. App. 3d 371, 402, 562 N.E.2d 1113, 1131.) Nor does the giving of *Miranda* warnings necessarily create a custodial interrogation. (*Wipfler*, 68 Ill. 2d at 170-71, 368 N.E.2d at 875.) Instead, numerous factors must be considered, including the location of the interrogation, any statement or nonverbal conduct by the police which indicated that the accused was not free to leave, the extent of the knowledge of the police officers and the focus of their investigation, the intentions of the officers, the mood and mode of police questioning, and the age, intelligence and mental makeup of the accused. *Matthews*, 205 Ill. App. 3d at 402-03, 562 N.E.2d at 1131-32.

Detective Gavin testified that he did not believe defendant was free to leave after defendant broke down and said, "I have a sickness" or "I am not well." However, the intent of the officers is relevant only to the extent that it was conveyed to the person confronted by the police. (*Woodson*, 220 Ill. App. 3d at 873, 581 N.E.2d at 325.) Here, Detective Gavin read defendant his constitutional rights, which does not transform the questioning into custodial interrogation *per se*.

The cases relied upon by defendant, *People v. Brown* (1990), 136 Ill. 2d 116, 554 N.E.2d 216, and *Reynolds* (94 Ill. 2d 160, 445 N.E.2d 766), and their progeny, all presented facts that differ significantly from this appeal. The facts presented in this case are more similar to those presented in *Wipfler*. (See also *Brown*, 136 Ill. 2d at 130, 554 N.E.2d at 222 (discussing the facts of *Oregon v. Mathiason* (1977), 429 U.S. 492, 50 L. Ed. 2d 714, 97 S. Ct. 711).) Defendant testified that he volunteered to accompany the police to look at mug shots. Defendant was not handcuffed or processed as an arrestee. The record indicates that the door of the glass-partitioned room was open. Defendant was questioned by two policemen. Detective Gavin testified that he had informed defendant before January 9, 1989, of Ms. Collazo's concern that he was involved in or had knowledge relating to fires in his neighborhood. Defendant broke down, prompting Detective Gavin to read defendant his rights. Defendant then made incriminating statements in response to police questions.

■ Defendant's apparently low intelligence, the setting of a police station interview room, police questioning that suggested that the po-

lice were making defendant a focus of the investigation, the fact that the *Miranda* warnings were read immediately upon defendant's breakdown, when taken together, militate in favor of holding that defendant was arrested before he made these statements. However, the standard of review is whether the trial court's ruling that defendant was arrested after making incriminating statements (and that probable cause for arrest existed at that time) was manifestly erroneous. Given the record of the hearing, we conclude that defendant has not shown that the trial court's ruling was manifestly erroneous.

## II

Defendant also claims the trial court erred in denying his motion to suppress statements, alleging that his low intelligence left him unable to knowingly and intelligently waive his constitutional rights. Illinois courts have long held that, to be admissible, a confession must be "voluntary" in a State-law sense and that a defendant's mental ability, familiarity with the English language, age, education, and experience are among factors to be weighed in determining from the totality of the circumstances whether a confession or waiver of rights is "voluntary" in that sense. (*People v. Bernasco* (1990), 138 Ill. 2d 349, 365, 562 N.E.2d 958, 965.) Illinois courts in effect have treated intelligent knowledge as one component of a confession's overall voluntariness, rather than as an admissibility criterion separate from voluntariness as in *Miranda* waiver law. (*Bernasco*, 138 Ill. 2d at 365, 562 N.E.2d at 965.) Voluntariness and intelligent knowledge are separate questions for Federal constitutional purposes; however, for purposes of our own evidence law they are interrelated. *Bernasco*, 138 Ill. 2d at 365-66, 562 N.E.2d at 965.

We do not sit to reweigh the evidence as if we were a trial court; a reviewing court will not disturb a trial court's determination on a motion to suppress evidence unless it is against the manifest weight of the evidence. (*Bernasco*, 138 Ill. 2d at 368, 562 N.E.2d at 966.) Whether a defendant intelligently waived his right to counsel depends, in each case, on the particular facts and circumstances of that case. (*Bernasco*, 138 Ill. 2d at 368, 562 N.E.2d at 966.) The intelligence of the defendant is only one factor relevant to a determination of whether the defendant's statements were voluntary. *People v. Negron* (1991), 220 Ill. App. 3d 754, 766, 580 N.E.2d 1301, 1310.

As in *Bernasco*, the trial court here reached its conclusion after hearing police and psychological testimony, as well as making its own observations of defendant while he was testifying. Given the record established at the hearing on defendant's motion, defendant has

failed to show that the trial court's decision was against the manifest weight of the evidence.

## III

Defendant claims that he should receive a new trial because the trial court denied his motion to excuse for cause the venireman who had heard about "the Marts case." Thus, defendant used a peremptory strike to remove the venireman from sitting on the jury. Without question, "[t]he law provides that a venireman is incompetent to sit as a juror if he cannot be impartial, and a reviewing court may reverse a conviction where a juror expressed self-doubt concerning his ability to be impartial." *People v. Delgado* (1992), 231 Ill. App. 3d 117, 120, 596 N.E.2d 149, 152.

■ However, on appeal, defendant has failed to allege that he exhausted his peremptory challenges when he excused the venireman or that an objectionable juror was subsequently forced upon him after he exhausted his peremptory challenges. In *Spies v. People* (1887), 122 Ill. 1, 12 N.E. 865, the court held even if a defendant has exhausted his peremptory challenges, no error will be found unless it is shown that an objectionable juror was forced upon the defendant after he had exhausted his peremptory challenges. Cases following *Spies* have likewise found no reversible error under similar circumstances, either on the theory of harmless error (*People v. Harris* (1990), 196 Ill. App. 3d 663, 677, 554 N.E.2d 367, 376-77), or waiver (*People v. Green* (1990), 199 Ill. App. 3d 927, 929-31, 557 N.E.2d 939, 941-42; *People v. Washington* (1982), 104 Ill. App. 3d 386, 392, 432 N.E.2d 1020, 1024-25). Given the record on appeal in this case, defendant has failed to show reversible error.

## IV

■ Defendant next argues that the State failed to prove the *corpus delicti* of arson and murder because his statements were the only evidence of a criminal act. In order to prove *corpus delicti*, the State must present evidence *aliunde* the defendant's confession that tends to show the commission of the offense and is corroborative of the statement. (*People v. Furby* (1990), 138 Ill. 2d 434, 446, 563 N.E.2d 421, 426.) However, once there is a showing of corroboration, there is no need to ignore the confession in determining whether the *corpus delicti* has been proved. (*People v. Morgan* (1991), 142 Ill. 2d 410, 464, 568 N.E.2d 755, 775, *rev'd on other grounds* (1992), 504 U.S. 719, 119 L. Ed. 2d 492, 112 S. Ct. 2222.) The other evidence need not prove the offense beyond a reasonable doubt or even correspond to the confession in every particular. (See *Furby*, 138 Ill. 2d at 450, 451-52,

563 N.E.2d at 428.) Rather, the other evidence need only tend to inspire belief in the defendant's confession or statement. *People v. Brechon* (1979), 72 Ill. App. 3d 178, 182, 390 N.E.2d 626, 629.

Defendant relies largely on cases such as *People v. Hougas* (1968), 91 Ill. App. 2d 246, 234 N.E.2d 63, where the only evidence of arson was the defendant's confession and the fact that a fire burned a building. However, the *corpus delicti* of arson is not at issue *per se* in this case, as defendant was granted judgment notwithstanding the verdict on that offense. Thus, this court focuses on the *corpus delicti* of involuntary manslaughter, though the two charges were related to some extent in this case. The *corpus delicti* in a criminal homicide consists of the fact of death caused by the criminal agency of another. (*Brechon*, 72 Ill. App. 3d at 180, 390 N.E.2d at 628.) Here, defendant does not dispute that persons died in the fire at 4802 N. Bernard; instead, defendant argues his confession was the only proof of the cause and origin of the fire.

However, the record in this case shows that Detective Micek testified that he accompanied defendant to the scene of the fire, where defendant explained how the fire started and spread. Detective Micek testified on cross-examination that he had read Detective Rokosik's report when he questioned defendant, but was not sufficiently familiar with the area to determine where the cause and origin of the fire were located.

■ Defendant's detailed explanation of the cause and origin of the fire and the consistency of that explanation with the investigator's report tend to inspire belief in the defendant's confession or statement. (See *People v. O'Neil* (1960), 18 Ill. 2d 461, 165 N.E.2d 319.) Thus, defendant's confession may be considered as part of the proof of *corpus delicti*. Defendant notes that the investigator testified he did not find a dumpster in the gangway, whereas defendant's statements indicate that he lit boxes and papers on fire in a dumpster. However, this discrepancy does not suffice to cast doubt on the larger point of defendant's statements—that defendant started the fire that caused the deaths of others. Given the record on appeal in this case, the State proved the requisite *corpus delicti*.

## V

Defendant argues that the trial court erred in denying his motion to join other prosecutions of defendant based on the statements he made to police. Section 114—7 of the Code of Criminal Procedure of 1963 provides that two or more charges may be tried together if the offenses and the defendants could have been joined in a single charge. (Ill. Rev. Stat. 1991, ch. 38, par. 114—7.) Section 111—4(a) of

the Code (Ill. Rev. Stat. 1991, ch. 38, par. 111—4(a)) provides that two or more offenses may be charged in the same indictment, information or complaint if they are based on the same act or on two or more acts which are part of the same comprehensive transaction. (Ill. Rev. Stat. 1991, ch. 38, par. 111—4(a).) The trial court has substantial discretion in determining the propriety of joinder and will not be reversed absent a showing of an abuse of that discretion. *People v. Terry* (1988), 177 Ill. App. 3d 185, 193-94, 532 N.E.2d 568, 574; *People v. Harris* (1986), 147 Ill. App. 3d 891, 894, 498 N.E.2d 621, 623; *People v. Mikel* (1979), 73 Ill. App. 3d 21, 27, 391 N.E.2d 550, 555.

Defendant argues on appeal that the "same act" and "comprehensive transaction" tests of section 114—4 are distinct from the requirements of section 114—7 and claims that a trial court must join charges when it would prejudice a defendant to try offenses separately. On this last point, defendant cites section 114—8 of the Code, which provides that a trial court may grant a severance if it appears that a defendant or the State is prejudiced by a joinder of related prosecutions or defendants in a single charge or by joinder of separate charges or defendants for trial. (Ill. Rev. Stat. 1991, ch. 38, par. 114—8.) Defendant further argues from this provision that the State should be required to show prejudice to defeat defendant's motion for joinder.

Defendant's argument is not persuasive. Section 114—7 provides for joinder where "the offenses and the defendants could have been joined in a single charge." (Ill. Rev. Stat. 1991, ch. 38, par. 114—7.) Section 114—4 plainly requires that offenses be based on the same act or part of the same comprehensive transaction to be joined in a single charge. Defendant notes that a defendant may be tried under charging instruments alleging offenses that do not meet the standards of section 114—4 where the defendant fails to object (*People v. Jennings* (1967), 84 Ill. App. 2d 33, 228 N.E.2d 566), or agrees to the joinder (*People v. Benka* (1983), 117 Ill. App. 3d 221, 453 N.E.2d 71). However, the fact that a defendant cannot complain on appeal of that to which he failed to object before trial, or that to which he agreed before trial, does not change the plain language of section 114—4. Defendant's reliance on section 114—8 is equally unavailing. Section 114—8 concerns severance of joined charges, not joinder of separate charges.

Thus, this court turns to consider whether defendant's acts were part of "the same comprehensive transaction." The answer to this question is not determined by precise factors, but rather by the facts presented in each case, and the matter is largely within the sound discretion of the trial court. (*People v. Mays* (1988), 176 Ill. App. 3d

1027, 1037, 532 N.E.2d 843, 849.) Joinder will not be permitted, however, if the offenses are unrelated, if the crimes occur several days apart, or if there is no concerted plan of action or scheme linking the two or more felonious acts. See *People v. Higgins* (1979), 71 Ill. App. 3d 912, 926-27, 390 N.E.2d 340, 351; *People v. Hyche* (1978), 63 Ill. App. 3d 575, 380 N.E.2d 373; *People v. Daniels* (1976), 35 Ill. App. 3d 791, 342 N.E.2d 809.

■ In this case, the only similarity among the offenses indicated in the record is that defendant made statements regarding a number of fires during one session of police questioning. The record does not indicate that these other offenses were close in time or distance; nor does the record indicate that the offenses were committed as part of a common scheme. Thus, defendant has failed to show that the trial court improperly denied his motion for joinder.

## VI

■ Defendant next contends that the trial court denied him a fair trial by restricting his cross-examination of police witnesses regarding their knowledge of Michael Gillon's apparent confessions to other fires for which defendant has been charged. Defendant also objects to restrictions on his questions regarding police knowledge of the details of Detective Rokosik's report, which defense counsel suggests were impressed upon defendant prior to his explanation of the cause and origin of the fire. However, as the State points out in its brief, defendant failed to raise either of these objections in his post-trial motion, which results in waiver on appeal.

## VII

■ Finally, defendant contends that he was denied a fair trial because the State was permitted to argue facts not in evidence and misstate the law during closing and rebuttal argument. However, a review of the comments in context indicates that the State did not misstate the facts or applicable law in this case.

Defendant also contends that the State improperly attempted to shift the burden of proof and comment on defendant's failure to testify by commenting on defendant's statements to the police by asking whether the two words, "I'm sorry" had been spoken during the trial. It is improper for the State to comment directly or indirectly on defendant's failure to testify. However, in *Neal* (111 Ill. 2d at 195-96, 489 N.E.2d at 851), our supreme court held that similar argument by the State was ambiguous. Moreover, even assuming *arguendo* that the comment was improper, where the defendant voluntarily confessed after being given *Miranda* warnings, this court has deemed

a reference to the defendant's failure to testify to be harmless error. *People v. Davis* (1992), 236 Ill. App. 3d 233, 243, 603 N.E.2d 635, 641-42.

For all the aforementioned reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

BUCKLEY and MANNING, JJ., concur.