# Illinois Official Reports

## Appellate Court

---

### *People v. Barghouti*, 2013 IL App (1st) 112373

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JAMAL BARGHOUTI, Defendant-Appellant. |
| District & No. | First District, Third Division<br>Docket No. 1-11-2373 |
| Filed<br>Rehearing denied | December 20, 2013<br>January 23, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The dismissal of defendant's postconviction petition as frivolous was reversed and the cause was remanded for second-stage proceedings, since the appellate court did not exceed its authority by requesting briefing on the overlooked issue of whether defense counsel was ineffective in failing to advise defendant of the sentences available if defendant rejected the State's offer in exchange for a guilty plea and defendant adequately alleged ineffective assistance of counsel during plea negotiations. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 02-CR-23680; the Hon. Stanley Sacks, Judge, presiding. |
| Judgment | Reversed and remanded. |

| Counsel on Appeal | Michael J. Pelletier, Alan D. Goldberg, and Robert Hirschhorn, all of State Appellate Defender's Office, of Chicago, for appellant. |
|---|---|
| | Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg, Mary P. Needham, and Hareena Meghani Wakely, Assistant State's Attorneys, of counsel), for the People. |

| Panel | JUSTICE NEVILLE delivered the judgment of the court, with opinion. |
|---|---|
| | Presiding Justice Hyman specially concurred, with opinion. |
| | Justice Mason specially concurred, with opinion. |

**OPINION**

¶ 1    This case involves the proper role of the appellate court on *de novo* review of the trial court's order dismissing a postconviction petition. The trial court found Jamal Barghouti guilty of aggravated criminal sexual assault and aggravated kidnapping. Jamal filed a postconviction petition in which he alleged that he did not receive effective assistance of counsel. The trial court dismissed the petition as frivolous. In reviewing the trial record and the postconviction petition, this court encountered an obvious error by the trial court that defense counsel failed to brief in the initial brief on appeal. We asked the parties to brief the issue. Their briefs did not change the conclusion that the trial court committed an obvious error and that the postconviction petition stated the gist of a claim for ineffective assistance of counsel. We find that Jamal adequately alleged that he would have accepted a plea bargain the prosecution offered if his attorney had informed him accurately about the range of sentences he faced if the trial court found him guilty as charged. Accordingly, we reverse the dismissal of the postconviction petition and remand to advance the petition to the second stage of postconviction proceedings.

¶ 2                                    BACKGROUND
¶ 3    K.M. first met Jamal in July 2002. On August 17, 2002, K.M. went to a picnic with Jamal. Around 11 p.m. that evening, Marcelle Garcia heard a female voice, screaming "stop," coming from a truck parked in an alley near Garcia's home. Garcia called 911. The police officers who responded to the call arrived a few minutes later and also heard K.M. screaming "stop." The officers saw Jamal, shirtless, get out of the truck while pulling up his shorts, with his brother, Eiad Barghouti, nearby. Jose Garcia, also shirtless, got out of the driver's side of the truck. The officers saw K.M. in the truck, naked, crying hysterically. She told the officers the three men

raped her. Doctors at a nearby hospital found semen in K.M.'s vagina. Prosecutors charged Garcia, Jamal, and Eiad with aggravated criminal sexual assault and aggravated kidnapping.

¶ 4 Jamal and Eiad chose a joint bench trial. Jamal testified that after the picnic ended, K.M. agreed to go with him to another party. They decided to take Garcia's truck, with Eiad and Garcia, to get there. Jamal had consensual sexual contact with K.M., and then he got out of the truck. When he returned, he saw Garcia kissing K.M. He walked away. He heard K.M. scream "stop," and then he returned to the truck, just before police arrived. Eiad corroborated Jamal's testimony.

¶ 5 K.M. testified that on the way back home from the picnic, Jamal forcibly removed her clothes and had intercourse with her against her will. Eiad performed oral sex on her as she continued screaming. Garcia had intercourse with her while Eiad held her down, and then Eiad had intercourse with her shortly before police arrived. An officer testified that when he approached the truck, he saw Eiad on top of K.M.

¶ 6 The trial court found Jamal and Eiad guilty as charged. The court sentenced Eiad to 45 years in prison and Jamal to 35 years in prison. The appellate court affirmed the convictions and sentences on the direct appeal. *People v. Barghouti*, Nos. 1-06-3448, 1-06-3465 cons. (June 9, 2009) (unpublished order under Supreme Court Rule 23).

¶ 7 On April 29, 2011, Jamal filed a postconviction petition, claiming that he received ineffective assistance of trial and appellate counsel, and that the State withheld exculpatory evidence. Jamal alleged that his trial attorney failed to interview witnesses Jamal identified who would have cast doubt on K.M.'s credibility.

¶ 8 Jamal also alleged:

"trial counsel *** failed to advise petitioner that if he denied the 12 year plea bargain that the State offered both petitioners, they would be facing the possibility of a prison term of 6 to 60 years if found guilty.

* * *

Defense counsel *** erroneously advised petitioner and his father that, if convicted, petitioner would be eligible for probation since he did not have a criminal record and Eiad, co-petitioner, would only rec[ei]ve 8 to 10 years. Due to this erroneous advice petitioner rejected the State plea offer ***.

* * *

If the defendant was aware of the minimum and maximum sentencing range of 6 to 60 years and defendant was not erroneously advised that he would only get probation since he had no criminal record[,] Petitioner would have *** accepted the plea offer of 12 years that the prosecutor offered him."

¶ 9 Jamal's affidavit, and the affidavit of Jamal's father, echo the allegations of the petition. Jamal said:

"Attorneys Perry Grimaldi and Ezra Hemphill erroneously advised my father, Jamal Barghouti Sr., Eiad Barghouti, and [me] that if we were found guilty, the most Eiad, co-defendant, would get is 8 to 10 years in prison. Jamal Jr. would be eligible for probation since he had no criminal record ***.

- 3 -

Both attorneys never advised us that we faced the possibility of a prison term of 6 to 60 years if we were found guilty and never told us about the extended sentencing factors that could apply ***.

***

I, at the time [of plea bargaining], did not know that I faced 6 to 60 years in prison, if I was found guilty of the counts with the extended terms in them and if I did know, I would have taken the plea offer but would have tr[i]ed to negotiate a less amount of time first."

¶ 10    The trial court dismissed the petition as frivolous and patently without merit. Jamal filed a notice of appeal, and the court appointed counsel to assist Jamal with the appeal. In the brief on appeal, appellate counsel raised the issue of the State's failure to disclose a witness who might have affected K.M.'s credibility and the failure of defense counsel to interview and call witnesses Jamal identified who might have cast further doubt on K.M.'s credibility. Counsel for the postconviction appeal raised no issue concerning Jamal's allegation that he rejected a plea bargain based on erroneous advice from his trial counsel. This court asked the parties for briefs concerning the allegations of erroneous advice concerning the plea bargain.

¶ 11                                                    ANALYSIS

¶ 12    At this court's prompting, counsel for the postconviction appeal asserted that Jamal did not intend to waive his claim that his trial counsel provided ineffective assistance by giving Jamal erroneous advice concerning the plea bargain. The State responded that we had overstepped our bounds when we requested briefing on an issue Jamal's attorneys failed to raise in their opening brief on appeal.

¶ 13    Because this case arises on appeal from the dismissal of a postconviction petition at the first stage of postconviction proceedings, we review the dismissal *de novo*. *People v. Coleman*, 183 Ill. 2d 366, 387-88 (1998). At the first stage of proceedings, "a petition alleging ineffective assistance may not be summarily dismissed if (i) it is arguable that counsel's performance fell below an objective standard of reasonableness and (ii) it is arguable that the defendant was prejudiced." *People v. Hodges*, 234 Ill. 2d 1, 17 (2009). We should affirm the dismissal "only if the petition has no arguable basis either in law or in fact. A petition which lacks an arguable basis either in law or in fact is one which is based on an indisputably meritless legal theory or a fanciful factual allegation." *Hodges*, 234 Ill. 2d at 16. Because we review the trial court's decision *de novo*, "the issue before us is limited solely to whether defendant's 'petition is frivolous or is patently without merit.' " *People v. Edwards*, 197 Ill. 2d 239, 247 (2001) (quoting 725 ILCS 5/122-2.1(a)(2) (West 1998)). We should not affirm the dismissal of the petition if the petition states the gist of a claim for a deprivation of constitutional rights. *Edwards*, 197 Ill. 2d at 244.

¶ 14    We note particularly that the *Edwards* court did not say that the court needed to decide whether the parts of the postconviction petition argued on appeal state the gist of a constitutional claim. Instead, this court must review the entire postconviction petition, in light of the trial record, to determine whether it states the gist of a constitutional claim. The *Hodges*

court elaborated on the standard applicable when the postconviction petitioner has alleged ineffective assistance of counsel. Nothing in *Hodges* limits the scope of review to those parts of the postconviction petition argued on appeal.

¶ 15 Applying the directives of *Edwards*, *Hodges*, and *Coleman*, we reviewed the record of the trial and the postconviction petition. In the petition, we encountered allegations not raised in appellate counsel's brief but which appeared to make the postconviction petition meritorious. Jamal alleged that his counsel failed to inform him of the range of sentences available if he rejected the State's offer to recommend a 12-year sentence in exchange for a guilty plea. The trial record did not contradict those allegations, which state the gist of a claim that trial counsel provided ineffective assistance. Because "a reviewing court does not lack authority to address unbriefed issues and may do so in the appropriate case, *i.e.*, when a clear and obvious error exists in the trial court proceedings" (*People v. Givens*, 237 Ill. 2d 311, 325 (2010)), we could reverse the trial court's judgment on the basis of those allegations. See *Hodges*, 234 Ill. 2d at 17. We chose instead to request supplemental briefs to allow the parties to address the issue. See *People v. Williams*, 239 Ill. 2d 119, 128 (2010); *People v. Green*, 225 Ill. 2d 612, 616 (2007); see also *People v. Feyrer*, 269 Ill. App. 3d 734, 739 (1994). We hold that we did not overstep the proper bounds of an appellate court when, upon discovering that the trial court committed an obvious error, we asked the parties to brief the issue.

¶ 16 In its supplemental brief, the State argues that, because Jamal did not obtain an affidavit from his trial counsel, we must not accept as true Jamal's allegation that his trial counsel failed to inform him, at the time of plea bargaining, that he faced a sentence of 6 to 60 years in prison if the trial court found him guilty as charged, and that he would have accepted the plea bargain the prosecution offered if trial counsel had informed him of the range of sentences available. The argument asks us to ignore the standards set in *Edwards* and *Coleman*. At the first stage of proceedings, we must accept as true all facts alleged in the postconviction petition, unless the record contradicts those allegations. *Coleman*, 183 Ill. 2d at 385. Our supreme court also has held that courts should excuse the absence of affidavits in which attorneys must confess their errors, because the "difficulty or impossibility of obtaining such an affidavit is self-apparent." *People v. Williams*, 47 Ill. 2d 1, 4 (1970), quoted in *People v. Hall*, 217 Ill. 2d 324, 333-34 (2005). We find that the lack of an affidavit from Jamal's trial counsel does not permit us to ignore the allegations of his postconviction petition, supported by his affidavit and the affidavit of his father.

¶ 17 Our supreme court, in *People v. Curry*, 178 Ill. 2d 509 (1997), said:

"A criminal defendant has the constitutional right to be *reasonably* informed with respect to the direct consequences of accepting or rejecting a plea offer. [Citations.] Concomitantly, a criminal defense attorney has the obligation to inform his or her client about the maximum and minimum sentences that can be imposed for the offenses with which the defendant is charged. [Citations.] In the case at bar, defense counsel did not fulfill this obligation. ***

*** Based on the facts before us, we conclude that defense counsel's performance during plea negotiations was objectively unreasonable." (Emphasis in original.) *Curry*, 178 Ill. 2d at 528-29.

- 5 -

¶ 18	Following *Curry*, we find that Jamal has adequately alleged facts showing that, arguably, his trial counsel provided ineffective assistance during plea negotiations. Jamal also adequately alleged that he arguably suffered prejudice because he would have accepted the plea bargain if he had known the sentencing range applicable to the crimes charged. See *Lafler v. Cooper*, 566 U.S. ___, ___, 132 S. Ct. 1376, 1391 (2012) (allegation that defendant would have accepted plea bargain credible when sentence imposed greatly exceeded bargain offered, and counsel failed to inform the defendant of sentencing range (citing *Cooper v. Lafler*, 376 F. App'x 563, 571-72 (6th Cir. 2010))). Accordingly, we reverse the trial court's judgment and remand for the appointment of counsel to assist Jamal with the second stage of postconviction proceedings.

¶ 19	CONCLUSION

¶ 20	When this court, in reviewing the record on appeal *de novo*, encounters an obvious error by the trial court, the court may address the issue even if the parties failed to brief the issue. *Givens*, 237 Ill. 2d at 325. The court does not overstep its bounds when it asks for briefing on the overlooked issue, rather than resolving the issue without briefing. See *Williams*, 239 Ill. 2d at 128. Jamal here adequately alleged that his trial counsel provided ineffective assistance during plea negotiations, when counsel failed to inform him accurately of the potential consequences of rejecting the bargain. Jamal also adequately alleged that he suffered prejudice due to counsel's error. Accordingly, we reverse the trial court's judgment and remand to advance the petition to the second stage of postconviction proceedings.

¶ 21	Reversed and remanded.

¶ 22	JUSTICE HYMAN, specially concurring.

¶ 23	As this court's opinion lays out, the request for supplemental briefing falls well within our authority. I write this special concurrence, however, to take issue with the repeated characterization in the State's supplemental brief that this court "stepped outside of its proper role as a neutral arbiter." The accusation stems from our asking the parties for supplemental briefing on petitioner's claim of ineffective assistance of trial counsel involving the plea bargain. Petitioner's opening brief did not address the claim, even though he raised it in his postconviction petition.

¶ 24	My experience on the bench has convinced me that judges, trial as well appellate, feel acutely conscious of their proper role as neutral arbiters. Every day, in every case I handle, I am reminded of that essential, central, and indispensable role entrusted to me and every member of the judiciary–that of neutral arbiter. I have never known a judge who felt otherwise. Whether denoted as neutrality or impartiality or independence, our legal system hinges on its observance. Our adherence is inviolable.

¶ 25	This is not the first time I have seen a brief accuse a court of crossing the line which cannot be crossed–the line of absolute neutrality. Recently this court issued an opinion involving an especially egregious example. See *Talamine v. Apartment Finders, Inc.*, 2013 IL App (1st)

121201. While the intemperate rhetoric employed here may not be as offensive as in *Talamine*, the damage is the same–every gratuitous and petulant comment hurts the integrity of the courts.

¶ 26 The State presents a cogent response, which does not benefit an iota from its distasteful characterization. The throw-away line, which is made without citation to authority, should have been deleted in the editing process as a matter of respect and decorum.

¶ 27 Of all those who might sling an arrow at the integrity of the court, the office of the State's Attorney would seem the least likely to do so. The office of State's Attorney knows what it means to uphold the law and the Constitution. And if we believe it means supplemental briefing for clarification that does not equate with shedding our neutrality, irrespective of the legal soundness of the request.

¶ 28 The words of Supreme Court Justice David Souter at his confirmation hearing summarize for me, not only my role and the role of every other judge of the courts of this nation, but also why we asked for the supplemental briefing:

> "The first lesson, simple as it is, is that whatever court we're in, whatever we are doing, at the end of our task some human being is going to be affected. Some human life is going to be changed by what we do. And so we had better use every power of our minds and our hearts and our beings to get those rulings right." *The Nomination of David H. Souter to Be Associate Justice of the Supreme Court of the United States*, *Hearing Before the Sen. Comm. on the Judiciary*, 101st Cong. 51-52 (1991) (statement of David Souter), *available at* http://www.gpo.gov/fdsys/pkg/GPO-CHRG-SOUTER/pdf/GPO-CHRG-SOUTER.pdf.

¶ 29 The supplemental briefing helped us get this ruling right.

¶ 30 JUSTICE MASON, specially concurring.

¶ 31 I specially concur in the judgment reversing and remanding petitioner's postconviction petition for second-stage proceedings. I do so because another panel of this division, on allegations virtually identical to those raised by petitioner here regarding witnesses who a codefendant claimed were not interviewed by defense counsel and whose testimony could have cast doubt on the victim's credibility, determined that first-stage dismissal was inappropriate. *People v. Barghouti*, 2013 IL App (1st) 110584-U. I can conceive of no basis why these codefendants should receive different treatment. I express no view on the remaining issue.