2020 IL App (2d) 180196-U
No. 2-18-0196
Order filed April 13, 2020
Modified Upon Denial of Rehearing April 27, 2020

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Boone County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 13-CF-122 |
| FRANK W. MARTIN, | ) ) | Honorable C. Robert Tobin III, |
| Defendant-Appellant. | ) | Judge, Presiding. |

PRESIDING JUSTICE BIRKETT delivered the judgment of the court.
Justices Hudson and Bridges concurred in the judgment.

**ORDER**

¶ 1 *Held*: The trial court properly summarily dismissed defendant's postconviction petition alleging ineffective assistance of trial counsel and appellate counsel: defendant was not prejudiced by trial counsel's decision not to interview and present testimony of defendant's son, and appellate counsel was not ineffective for not raising the issue on appeal, because the proposed testimony that defendant did not hike and sleep naked with his son was not relevant to whether defendant committed sex offenses against his daughter.

¶ 2 Following a jury trial in the circuit court of Boone County, defendant, Frank W. Martin,

was convicted of four counts of predatory criminal sexual assault of a child (720 ILCS 5/12-14.1

(West 2000)) and two counts of aggravated criminal sexual abuse (*id.* § 12-16). The convictions

were based on evidence that defendant committed acts of sexual penetration and sexual conduct with his daughter, A.M., when she was under 13 years of age. This appeal arises from the summary dismissal of defendant's petition under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2018)) for relief from those convictions. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4      Evidence at trial establishes the following facts.[1]  A.M., who was born in 1990, is the oldest of defendant's children with his former wife, H.M.  Her brother Z.M. was born in 1992.  Two other children, D.M., who is female, and T.M., who is male, were born later.  A.M. testified at trial that defendant claimed to be a nudist.  He was often naked when H.M. was out of the house.  When A.M. was between the ages of 5 and 12 or 13, she would periodically go hiking with defendant. Defendant hiked naked and when A.M. was younger, she would hike naked as well.  As A.M. got older, she went hiking with defendant less often, and she would remain dressed.

¶ 5      A.M. testified about defendant's history of sexually molesting her.  When A.M. was five or six years old, defendant would get into bed with her and kiss her face, cheek, and chest.  He also touched her chest and vagina.  He sometimes touched her buttocks as well.  When she was eight or nine years old, Defendant began performing oral sex on A.M. and placing his finger in her vagina and her hand on his penis.  The molestation occurred on at least 50 occasions over the years. A.M. reported defendant's conduct to the police in 2013, after Z.M. reported that defendant had engaged in sexual activities with him too.  At that point, Z.M. became concerned that defendant might be engaging in similar activities with their younger brother, T.M.

---

[1] In our summary of the facts, we draw heavily from our decision in *People v. Martin*, 2017 IL App (2d) 150564-U (*Martin I*).

¶ 6    H.M. testified that, in 2007, A.M. told her that defendant's nudity made her uncomfortable. A.M. also told H.M. that defendant taught her about sex by pointing to body parts while nude. When H.M. confronted defendant, he admitted that he taught A.M. about sex in the manner A.M. described, but he insisted that he never touched or "raped" A.M. Shortly thereafter, defendant moved out of the house, and he and H.M. have since divorced.

¶ 7    Z.M. testified that, when he was between the ages of 6 and 10, he and defendant would sometimes watch television together after other family members had gone to bed. Defendant would be naked, and he would take Z.M.'s clothes off. They would lie on the couch together. When Z.M. was seven or eight years old, he and defendant took a trip to Indiana to attend an auto race. They shared a hotel room the night before the race. Defendant had Z.M. sleep with him in defendant's bed. Defendant took off Z.M.'s shorts and they both were naked. Defendant touched Z.M.'s penis and made Z.M. touch defendant's penis. In the morning they "play"-wrestled with each other. After pinning Z.M. on his stomach, defendant placed his erect penis between Z.M.'s buttocks. As permitted under section 115-7.3(b) of the Code of Criminal Procedure of 1963 (725 ILCS 5/115-7.3(b) (West 2014)), the evidence was admitted for purposes of showing defendant's propensity to engage in such conduct. See *People v. Childress*, 338 Ill. App. 3d 540, 549 (2003). Z.M.

¶ 8    Z.M. contacted the police in 2013 after his fiancée complained that defendant had been looking down her shirt at a family celebration. The accusation triggered "a flood of memories." In addition, Z.M. was concerned that defendant might be molesting T.M., who was 10 years old at the time. Z.M. testified that he overheard T.M. mention an instance when T.M. and defendant hiked naked together and defendant would not let T.M. get dressed when they got home. Defendant told T.M. that they would discuss that privately later.

¶ 9    David Dammon testified that in 2013 he was a detective with the Belvidere Police Department. Dammon interviewed defendant just prior to defendant's arrest. A video recording of the interview was admitted into evidence and played for the jury. During the interview, defendant told police that he was a nudist, but he denied being nude around his children. He admitted that he had hiked naked, but he denied that he had done so with A.M. He also denied touching A.M. or Z.M. inappropriately. Dammon reviewed a video recording of an interview with T.M. conducted at the Carrie Lynn Children's Center. Dammon conducted no further investigation pertaining to T.M.

¶ 10    Defendant testified on his own behalf. He denied engaging in oral sex with A.M. or digitally penetrating her. He also denied touching her breasts or buttocks or placing her hand on his penis. Defendant testified that from around September 1999 until June 2003 he worked at Continental Web Press in Itasca, which was more than an hour's drive from home. He worked 12-hour shifts, 6 or 7 days a week. He would leave for work at 4:30 p.m. and return home at 7:30 a.m. Defendant carpooled to work with Thomas Zastrow and another individual. Zastrow corroborated the details of defendant's testimony about their commute.

¶ 11    After the jury found defendant guilty of four counts of predatory criminal sexual assault of a child and two counts of aggravated criminal sexual abuse, defendant filed posttrial motions through counsel and *pro se*. In his *pro se* motion, defendant argued, *inter alia*, that he received ineffective assistance because his attorney did not interview witnesses. The allegation of ineffective assistance of counsel caused the trial court to inquire into whether to appoint a new attorney to represent defendant in connection with his *pro se* motion. See *People v. Patrick*, 2011 IL 111666, ¶ 32. Defendant advised the court that he believed counsel should have interviewed

A.M., H.M., and two other possible witnesses. Defendant did not mention T.M. as a possible witness.

¶ 12    Speaking in allocution at his sentencing hearing, defendant maintained that he was innocent but acknowledged that he should not have practiced nudism in his children's presence. Defendant claimed that the accusations against him were false and were made at a time when there was conflict in the family. The trial court imposed consecutive sentences of eight years' imprisonment on each count of predatory criminal sexual assault of a child and four years' imprisonment on each count of aggravated criminal sexual abuse.

¶ 13    In *Martin I*, we affirmed defendant's convictions. In his subsequent postconviction petition, he claimed that he was deprived of his right to the effective assistance of counsel at trial. He alleged that trial counsel failed to interview potential defense witnesses, including T.M. According to the petition, T.M. would have testified, *inter alia*, that he and defendant neither slept nor hiked naked together. Defendant also claimed that, because appellate counsel did not raise the issue on direct appeal, appellate counsel did not provide effective assistance. The trial court summarily dismissed the petition and this appeal followed.

¶ 14                                  II. ANALYSIS

¶ 15    Before considering defendant's argument on appeal, we first summarize the relevant principles governing proceedings under the Act. Our supreme court has stated as follows:

"The Act [citation] provides a remedy for incarcerated defendants who have suffered a substantial violation of their constitutional rights at trial. Under the Act, a postconviction proceeding contains three stages. At the first stage, the circuit court must independently review the postconviction petition, without input from the State, and determine whether it is 'frivolous or is patently without merit.' [Citation.] If the court

makes this determination, the court must dismiss the petition in a written order. [Citation.] If the petition is not dismissed, the proceedings move to the second stage. [Citation.]

At the second stage, counsel is appointed to represent the defendant, if he is indigent [citation], and the State is permitted to file responsive pleadings [citation]. The circuit court must determine at this stage whether the petition and any accompanying documentation make a substantial showing of a constitutional violation. [Citation.] If no such showing is made, the petition is dismissed. If, however, the petition sets forth a substantial showing of a constitutional violation, it is advanced to the third stage, where the circuit court conducts an evidentiary hearing [citation]." *People v. Johnson*, 2018 IL 122227, ¶¶ 14-15.

¶ 16 A petition will be dismissed at the first stage, as frivolous or patently without merit, if the petition has no arguable basis either in law or in fact. *People v. Hodges*, 234 Ill. 2d 1, 11-12 (2009). That is the case when a petition "is based on an indisputably meritless legal theory or a fanciful factual allegation." *Id.* at 16. Section 122-2 of the Act (725 ILCS 5/122-2 (West 2016)) governs the form of postconviction petitions. "At the first stage of proceedings, we must accept as true all facts alleged in the postconviction petition, unless the record contradicts those allegations." *People v. Barghouti*, 2013 IL App (1st) 112373, ¶ 16. Our review is *de novo*. *Id.* ¶ 13.

¶ 17 Defendant claimed in his petition that, because trial counsel failed to interview T.M., he did not receive the effective assistance of counsel. Defendant also argued that he received ineffective assistance of counsel on appeal because appellate counsel failed to raise the issue of trial counsel's ineffectiveness. To establish ineffective assistance of counsel, a criminal defendant must show that counsel's performance "fell below an objective standard of reasonableness" and

that the deficient performance was prejudicial in that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984). The same standard applies to claims of ineffective assistance of appellate counsel. *People v. Borizov*, 2019 IL App (2d) 170004, ¶ 13.

¶ 18    In his postconviction petition, defendant alleged:

"[Defendant] explicitly informed counsel *** that [T.M.] would have proven crucial during his case-in-chief. That he would have given testimony to, *inter alia*, that [defendant] was not sleepnig [*sic*] naked with him and taking him hiking naked; that his mother lied about her relationship with her boyfriend; that [T.M.] wanted to live with [defendant]; that his mother got drunk, puked and passed out in front of him, and that, [defendant] got upset about it and wanted [T.M.] to live with [defendant]; that whenever [T.M.] stayed with [defendant, he] would get upset with [T.M.] if he walked in on [defendant] in the shower, bathroom, or changing clothes, and [defendant] would tell him to get clothes on when he would come downstairs after a shower."

¶ 19    According to defendant, trial counsel's failure to call T.M. as a witness was arguably prejudicial within the meaning of *Strickland*. Defendant maintains that T.M.'s testimony "would have corroborated [defendant's] testimony, thereby enhancing the credibility of [defendant's] testimony and his defense." Defendant filed a *pro se* motion for a new trial on the basis that his attorney should have called certain witnesses, but at the hearing on the motion, he did not identify T.M. as one of those witnesses. Defendant does not explain why he neglected to mention T.M. at the hearing. In any event, defendant's argument is meritless. The State presented no evidence that defendant engaged in inappropriate conduct with T.M. Indeed, Detective Dammon testified that, after watching a videotaped interview with T.M. that took place at the Carrie Lynn Children's

Center, he conducted no further investigation pertaining to T.M. Z.M.'s testimony that he heard T.M. refer to hiking in the nude with defendant was admitted for the sole purpose of explaining why Z.M. contacted the police years after being abused by defendant. T.M.'s testimony would not have rebutted any of the State's evidence regarding crimes against A.M.; the only rationale for offering it would be to establish defendant's good character to show that it was unlikely that he would abuse his other children. However, a criminal defendant may not introduce evidence of specific acts of good conduct as proof of his or her character. *People v. Williams*, 165 Ill. 2d 51, 65-66 (1995). The *Williams* court applied that principle where the defendant, who was charged with the attempted murder of his girlfriend's two-year-old son, had admitted to punching the child and hitting him with a belt on prior occasions. The court held that the defendant was not entitled to call a witness who would testify that he trusted the defendant with his children and had allowed the defendant to babysit them. Similarly, evidence of defendant's appropriate behavior with T.M. would not be admissible to prove that he did not abuse A.M. and Z.M.

¶ 20    Defendant also argues that "[T.M.'s] testimony would have refuted [Z.M.'s] claim that he overheard [T.M.] talking about hiking in the nude with their father, a statement that supposedly prompted [Z.M.] to contact the police." According to defendant, T.M.'s testimony would thereby have called Z.M.'s motive for contacting the police into question. Defendant contends that "[a]s [defendant] made clear at the sentencing hearing, there is more to the story than what was adduced at trial, for he said that A.M. and [Z.M.] made their allegations at a time when they were arguing with their father." Again, the argument is meritless. In his petition, defendant alleged that T.M. would deny hiking in the nude with defendant. However, Z.M.'s purported motive for contacting police was based on what he *heard* T.M. say. The veracity of T.M.'s statement has no bearing on Z.M.'s motive for contacting police. In his postconviction petition, defendant did not allege that

T.M. would deny making the remark that Z.M. overheard. Furthermore, it is irrelevant whether A.M. and Z.M. were arguing with defendant. As defendant himself observes, no such evidence was adduced at trial, and defendant does not claim that T.M. would have testified that there was any ill will between defendant and his two oldest children.

¶ 21    Even if T.M. denied making the remark Z.M. claimed to have overheard, Z.M.'s testimony would not be proper for impeachment purposes. A witness may not be impeached with evidence contradicting his or her testimony if the evidence is collateral to the issues in the case. *People v. Abrams*, 260 Ill. App. 3d 566, 579 (1994). "A matter will be deemed collateral if, but for the fact that it contradicts a statement of a witness, it would be inadmissible or, put another way, that its only relevance to the underlying action is that it confutes an element of a witness' testimony." *Id.* What T.M. said, or did not say, about hiking in the nude with defendant has no bearing on the question of whether defendant abused A.M.; the only reason for admitting the evidence would be to insinuate that Z.M. was not credible. Accordingly, T.M.'s testimony would have been inadmissible.

¶ 22    We conclude that it is not arguable that trial counsel's failure to interview T.M. was prejudicial within the meaning of *Strickland*. Furthermore, because defendant's claim of ineffective assistance of trial counsel is meritless, appellate counsel's failure to raise the issue in defendant's direct appeal engendered no prejudice. See *Borizov*, 2019 IL App (2d) 170004, ¶ 14. The trial court did not err by summarily dismissing the petition.

¶ 23                                III. CONCLUSION

¶ 24    For the foregoing reasons, the judgment of the circuit court of Boone County is affirmed.

¶ 25    Affirmed.