NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2021 IL App (4th) 190477-U

NO. 4-19-0477

IN THE APPELLATE COURT

FILED
June 9, 2021
Carla Bender
4th District Appellate
Court, IL

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Schuyler County |
| JAMES M. BOWMAN, | ) | No. 16CF39 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Amy Christine Lannerd, |
| | ) | Judge Presiding. |

JUSTICE DeARMOND delivered the judgment of the court.
Justices Holder White and Steigmann concurred in the judgment.

**ORDER**

¶ 1    *Held*: Defendant presented the gist of a constitutional claim of ineffective assistance of
counsel sufficient to advance his postconviction petition to second-stage
proceedings.

¶ 2    In July 2017, defendant, James M. Bowman, pleaded guilty to residential burglary

(720 ILCS 5/19-3(a) (West 2016)). The trial court accepted defendant's fully negotiated guilty

plea and sentenced him to 18 years' imprisonment.

¶ 3    In April 2019, defendant filed *pro se* a petition pursuant to the Post-Conviction

Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2018)), alleging a violation of his right

against self-incrimination and ineffective assistance of counsel. The trial court later summarily

dismissed defendant's petition as frivolous and patently without merit (725 ILCS 5/122-2.1

(West 2018)).

¶ 4       Defendant appeals, arguing the trial court erred by summarily dismissing his *pro se* postconviction petition, claiming the petition presented the gist of meritorious claims. We agree.

¶ 5                                    I. BACKGROUND

¶ 6       On December 28, 2016, the State charged defendant by information with residential burglary (720 ILCS 5/19-3(a) (West 2016)) (count I) and burglary (720 ILCS 5/19-1(a) (West 2016)) (count II). Due to defendant's criminal history, both counts were charged as Class X felonies (see 730 ILCS 5/5-4.5-95(b) (West 2016)), with a sentencing range for each count of 6 to 30 years' imprisonment.

¶ 7       Jeffrey Boyd, a deputy with the Schuyler County Sheriff's Office, filed a probable cause report for defendant's arrest. On December 21, 2016, Deputy Boyd responded to a report of a residential burglary at the home of Tim Ward in Rushville, Illinois. Several items were missing from the house and garage, including a Ford F-150 pickup truck. Deputy Boyd located several missing items, and the pickup truck was discovered abandoned near Beardstown, Illinois, later that day. Through interviews, Deputy Boyd suspected defendant of the burglary.

¶ 8       On December 22, 2016, defendant entered the Schuyler County Sheriff's Office with his parents. Defendant had in his possession several items from the Ward residence. Defendant stated "he had something he wanted to tell" the officers. Deputy Boyd reported, "[Defendant] was brought into an Interview room and [defendant] was asked what he had to tell us. [Defendant] stated he had taken a vehicle from [the] [R]ushville area and Burglarized a house. [Defendant] was then advised of his [*Miranda* rights] and asked what happen[ed]." Defendant explained the burglary in detail and informed the officers as to the location of the stolen items, some of which were later recovered.

¶ 9        On July 27, 2017, defendant entered a fully negotiated guilty plea to count I. In exchange for his plea, the State agreed to dismiss count II, and defendant would be sentenced to 18 years in the Department of Corrections and pay restitution. Prior to accepting his guilty plea, the trial court admonished defendant pursuant to Illinois Supreme Court Rule 402(1) (eff. July 1, 2012). The State presented the following factual basis:

> "[T]he State would call Jeff Boyd of the Schuyler County Sheriff's Office who would testify that on or about December 21, 2016, he was dispatched to 15730 County Farm Road here in Schuyler County to the residence of Tim and Sheila Ward where he observed footwear impressions and pry marks on the door. Also reported was a missing F-150 truck and that entry was made through a downstairs window.
>
> He conducted interviews and established there was a *** missing ATM card used in Beardstown, Illinois and the vehicle was located one mile west of Beardstown.
>
> *** [H]e would also testify that on or about December 22, 2016[,] the defendant came to the Sheriff's Office and he conducted an audio and video interview where he confessed to burglarizing the residence and entering through a downstairs window and also taking a Ford F-150 and abandoning the truck near Beardstown."

The trial court accepted defendant's guilty plea and sentenced defendant pursuant to the negotiated plea to 18 years' incarceration.

¶ 10        Defendant did not file a motion to withdraw his guilty plea or a direct appeal.

¶ 11    On April 10, 2018, defendant filed a *pro se* postconviction petition. In his petition, defendant alleged violations of his fifth amendment right against self-incrimination where he was questioned without being advised of his rights pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966). Defendant stated he entered the sheriff's office after he was "told by family and friends that the Sheriff's [office] w[as] looking for him." After entering the lobby, defendant was approached by Sheriff Bill Redshaw, who asked defendant, " 'Did you do these buglarys [*sic*] or have any knowledge of or involved in any way' " and " 'where is the stolen property' " without informing defendant of his rights per *Miranda*. Defendant stated he was then taken to an office area, where he was informed of his *Miranda* rights. Defendant stated he made a full confession "because only moments earlier he had admitted to Sheriff Redshaw of his involvement and felt he had no choice at that point." Defendant argued his confession should have been suppressed in full where the statements were intrinsically linked.

¶ 12    Defendant further alleged in his *pro se* petition his trial counsel was ineffective for failing to investigate the circumstances of defendant's confession and file a motion to suppress defendant's statements. Defendant stated he informed his counsel he was questioned and made incriminating statements without being informed of his *Miranda* rights and informed counsel of three witnesses and video evidence of the interaction in the lobby of the sheriff's office, but counsel took no action. Defendant asserted that, had counsel filed a motion to suppress, "there is a reasonable probability he would have not been convicted without this evidence or at minimum he would have been able to plea to a sentence of less prison time."

¶ 13    Defendant attached to his petition two identical affidavits signed by his parents respectively. The affidavits allege:

"On December 22, 2016, [defendant and his parents] went to the Schuyler [County Sheriff's] Office so that [defendant] could turn himself in ***. Once entering the [sheriff's office], we were met in the lobby by [Sheriff] Redshaw. [Defendant] at this time told [Sheriff] Redshaw that he was told that [the sheriff] was looking for him and that [the sheriff] may have the wrong people in jail. [Defendant] asked [Sheriff] Redshaw that if he told him what he done would he let the wrong people go. [Sheriff] Redshaw said [to] tell him what happened and we'll see. [Defendant] admitted to [Sheriff] Redshaw that he had robbed a house and truck. [Sheriff] Redshaw asked [defendant] if it was the one outside of town and [defendant] said yes. [Sheriff] Redshaw asked [defendant] where the stolen items w[ere] and [defendant] told him [they were] in a safe place. [Sheriff] Redshaw asked where[,] and [defendant] said that he was not telling him anything more until he let the wrong people go. [Sheriff] Redshaw said that he was going to let his deputies take care of this and asked [defendant] [if he would] help him get drug dealers[,] cause he could tell that [defendant] was under the influence. [Defendant] was then escorted to the back without him being read his Miranda rights during the interrogation by [Sheriff] Redshaw."

¶ 14 On June 18, 2019, the trial court summarily dismissed defendant's postconviction petition. The trial court found the circumstances of defendant's questioning in the lobby were "not sufficient to establish that he was in custody" and that defendant did not "allege that he affirmatively invoked the protections of the Fifth Amendment during his discussion with the [Sheriff] in the lobby." As to ineffective assistance of counsel, the trial court found defendant "advised his counsel of the facts surrounding the questioning in the lobby. This information was

known to the Defendant and his attorney prior to the entry of the fully negotiated guilty plea." Further, the court found defendant "has failed to plead any facts, even liberally construed, in his petition that would satisfy the two-pronged test of [*Strickland*]." The court dismissed defendant's petition as frivolous and patently without merit.

¶ 15    This appeal followed.

¶ 16                                II. ANALYSIS

¶ 17    On appeal, defendant argues the trial court erred by summarily dismissing his *pro se* postconviction petition, claiming the petition presents the gist of a meritorious claim his fifth amendment right against self-incrimination (U.S. Const., amend. V) was violated and his counsel was ineffective for failing to investigate these claims and file a motion to suppress his confession. In response, the State contends defendant has forfeited and waived his arguments and, alternatively, defendant's petition is frivolous and patently without merit.

¶ 18                           A. Forfeiture and Waiver

¶ 19    The State contends defendant forfeits his arguments where he did not file a motion to suppress during the proceedings below and did not previously raise his arguments of ineffective assistance of counsel. As defendant raises the issue, his counsel was ineffective for failing to file the motion to suppress below, and defendant did not and was not required to file a direct appeal (see *People v. Brooks*, 371 Ill. App. 3d 482, 486, 867 N.E.2d 1072, 1076 (2007) ("The [Act] does not require a defendant to exhaust his direct appeal rights to obtain relief under the Act.")). Where defendant has never appealed, the rule prohibiting defendant from raising an issue which could have been raised on direct appeal is inapplicable and defendant has not forfeited his claims.

¶ 20        As to waiver, the State contends defendant waived his arguments by pleading guilty. Citing *Tollett v. Henderson*, 411 U.S. 258 (1973), the State argues defendant has waived his constitutional claims and may only attack the voluntary and intelligent character of his guilty plea. In *Tollett*, the Supreme Court affirmed:

> "[A] guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the [range of competence demanded of attorneys in criminal cases]." *Tollett*, 411 U.S. at 267.

Defendant's claims of ineffective assistance of counsel are precisely the claims contemplated by *Tollett* and excused from waiver. Although defendant's other claim directed to violations of his fifth amendment rights might otherwise be waived by his guilty plea, "summary partial dismissals are not permitted at the first stage of a postconviction proceeding." *People v. Hodges*, 234 Ill. 2d 1, 22 n.8, 912 N.E.2d 1204, 1215 n.8 (2009). As defendant's postconviction petition as a whole is not waived, we consider defendant's claims.

¶ 21                    B. The Postconviction Act

¶ 22        The Act "provides a mechanism for criminal defendants to challenge their convictions or sentences based on a substantial violation of their rights under the federal or state constitutions." *People v. Morris*, 236 Ill. 2d 345, 354, 925 N.E.2d 1069, 1075 (2010). A proceeding under the Act is a collateral proceeding and not an appeal from the defendant's

conviction and sentence. *People v. English*, 2013 IL 112890, ¶ 21, 987 N.E.2d 371. The defendant must show he suffered a substantial deprivation of his federal or state constitutional rights. *People v. Caballero*, 228 Ill. 2d 79, 83, 885 N.E.2d 1044, 1046 (2008).

¶ 23　　　　The Act establishes a three-stage process for adjudicating a postconviction petition. *English*, 2013 IL 112890, ¶ 23. Here, defendant's petition was dismissed at the first stage. At the first stage, the trial court must review the postconviction petition and determine whether "the petition is frivolous or is patently without merit." 725 ILCS 5/122-2.1(a)(2) (West 2018). This is an independent assessment of the substantive merit of the petition. *People v. Harris*, 224 Ill. 2d 115, 126, 862 N.E.2d 960, 967 (2007). Our supreme court has held "a *pro se* petition seeking postconviction relief under the Act for a denial of constitutional rights may be summarily dismissed as frivolous or patently without merit only if the petition has no arguable basis either in law or in fact." *Hodges*, 234 Ill. 2d at 11-12. A petition lacks an arguable legal basis when it is based on an indisputably meritless legal theory, such as one that is completely contradicted by the record. *Hodges*, 234 Ill. 2d at 16. A petition lacks an arguable factual basis when it is based on a fanciful factual allegation, such as one that is clearly baseless, fantastic, or delusional. *Hodges*, 234 Ill. 2d at 16-17.

¶ 24　　　　To survive dismissal at the initial stage, the postconviction petition need only present the gist of a constitutional claim. *Hodges*, 234 Ill. 2d at 9. A defendant at the first stage need only present a limited amount of detail in the petition. *Hodges*, 234 Ill. 2d at 9. The threshold for surviving first-stage proceedings is low because defendants with limited legal knowledge or training must draft most postconviction petitions. *Hodges*, 234 Ill. 2d at 9. At the first stage, we must accept as true all facts alleged in the petition unless the facts are contradicted by the record. *People v. Barghouti*, 2013 IL App (1st) 112373, ¶ 26, 2 N.E.3d 1225. Thus, if any

claim in the postconviction petition contains statements that, if true, would establish the gist of a constitutional claim, the trial court must order the entire postconviction petition docketed for further proceedings under the Act. *People v. Rivera*, 198 Ill. 2d 364, 371, 763 N.E.2d 306, 310 (2001). Our review of the first-stage dismissal of a postconviction petition is *de novo*. *People v. Dunlap*, 2011 IL App (4th) 100595, ¶ 20, 963 N.E.2d 394.

¶ 25                                    C. Ineffective Assistance of Counsel

¶ 26            A defendant's claim of ineffective assistance of counsel is analyzed under the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *People v. Cathey*, 2012 IL 111946, ¶ 23, 965 N.E.2d 1109. To prevail on such a claim, "a defendant must show both that counsel's performance was deficient and that the deficient performance prejudiced the defendant." *People v. Petrenko*, 237 Ill. 2d 490, 496, 931 N.E.2d 1198, 1203 (2010). To establish deficient performance, the defendant must show his attorney's performance fell below an objective standard of reasonableness. *People v. Evans*, 209 Ill. 2d 194, 219, 808 N.E.2d 939, 953 (2004) (citing *Strickland*, 466 U.S. at 687-88). "When a guilty plea is challenged on ineffective assistance grounds, the prejudice prong of *Strickland* is satisfied if a reasonable probability exists that, but for counsel's errors, the defendant would not have pleaded guilty and would have insisted on going to trial." *People v. Miller*, 346 Ill. App. 3d 972, 982, 806 N.E.2d 759, 767 (2004). A defendant must satisfy both prongs of the *Strickland* standard, and the failure to satisfy either prong precludes a finding of ineffective assistance of counsel. *People v. Clendenin*, 238 Ill. 2d 302, 317-18, 939 N.E.2d 310, 319 (2010).

¶ 27            Defendant claims he received ineffective assistance of counsel when pleading guilty where counsel did not investigate his claims his confession was involuntary and did not move to suppress his confession. A guilty plea is only voluntary if it is entered with the

assistance of effective counsel. *People v. Mendez*, 336 Ill. App. 3d 935, 939, 784 N.E.2d 425, 427 (2003). If a defendant can establish that his counsel was ineffective for failing to advise him of available defenses, then he may be entitled to withdraw his guilty plea. *Mendez*, 336 Ill. App. 3d at 939. Also, counsel can be found to provide ineffective assistance when he fails to conduct an adequate inquiry into the evidence concerning the charges against his client. *People v. Mitchell*, 2012 IL App (1st) 100907, ¶ 52, 972 N.E.2d 1153.

¶ 28        The fifth amendment to the United States Constitution provides that no person "shall be compelled in any criminal case to be a witness against himself." U.S. Const., amend. V. Similarly, the Illinois Constitution provides that "[n]o person shall be compelled in a criminal case to give evidence against himself." Ill. Const. 1970, art. I, § 10. In *Miranda*, the Supreme Court stated:

> "[W]hen an individual is taken into custody or otherwise deprived of his freedom by the authorities in any significant way and is subjected to questioning, the privilege against self-incrimination is jeopardized. *** He must be warned prior to any questioning that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires." *Miranda*, 384 U.S. at 478-79.

A defendant's statements stemming from "custodial interrogation" are inadmissible unless preceded by the defendant's knowing and intelligent waiver of these rights. *Miranda*, 384 U.S. at 444. In addition, where an officer deliberately withholds *Miranda* warnings until the suspect makes incriminating statements—the "question first, warn later" technique—subsequent statements may also be inadmissible. *People v. Griffin*, 385 Ill. App. 3d 202, 213, 898 N.E.2d

704, 713 (2008). Where such a process is used, " 'postwarning statements that are related to the substance of prewarning statements must be excluded unless curative measures are taken before the postwarning statement is made.' " *Griffin*, 385 Ill. App. 3d at 213-14 (quoting *Missouri v. Seibert*, 542 U.S. 600, 622 (2004) (Kennedy, J., concurring)). Curative measures could include " 'a substantial break in time and circumstances between the prewarning statement and the *Miranda* warning,' or 'an addition warning that explains the likely inadmissibility of the prewarning custodial statement.' " *Griffin*, 385 Ill. App. 3d at 214 (quoting *Seibert*, 542 U.S. at 622 (Kennedy, J., concurring)).

¶ 29        "Custodial interrogation" means "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda*, 384 U.S. at 444. Whether a defendant was in custody so as to require *Miranda* warnings is a question of fact. *People v. Foster*, 195 Ill. App. 3d 926, 943, 552 N.E.2d 1112, 1125 (1990). Interrogation is custodial if, under the circumstances of the questioning, "a reasonable person would have felt he or she was not at liberty to terminate the interrogation and leave." *People v. Braggs*, 209 Ill. 2d 492, 506, 810 N.E.2d 472, 481 (2004). Relevant factors to consider when determining whether an interrogation was custodial include "(1) the time and place of the confrontation; (2) the number of police officers present; (3) the presence or absence of family or friends; (4) any indicia of a formal arrest procedure, such as physical restraint, the show of weapons or force, booking or fingerprinting; and (5) the manner by which the individual arrived at the place of the interrogation." *People v. Melock*, 149 Ill. 2d 423, 440, 599 N.E.2d 941, 948 (1992). Further considerations include "the location, length, mood and mode of the interrogation; *** the intentions of the officers; and the extent of

knowledge of the officers and the focus of their investigation." *People v. Brown*, 136 Ill. 2d 116, 124-25, 554 N.E.2d 216, 220 (1990).

¶ 30　　　　In this case, defendant asserted in his *pro se* postconviction petition he was subjected to questioning in the lobby of the sheriff's office that amounted to an "interrogation." Defendant entered the sheriff's office under the impression the office was "looking for him." According to defendant's account, Sheriff Redshaw interrogated defendant in the lobby, asking specific questions to illicit incriminating information, before taking defendant to an office area for further questioning. In support, defendant presented two affidavits from witnesses of defendant's interaction in the lobby of the sheriff's office which also refer to Sheriff Redshaw's discussion with defendant as an "interrogation" and state Sheriff Redshaw noted defendant was "under the influence."

¶ 31　　　　The arresting officer's report mentions the period when defendant entered the sheriff's office only briefly, stating:

> "[Defendant] entered [the] Sheriffs [Office] with his Dad and mom. [Defendant] had with him a Coat, Binoculars, 2 game Camera's [*sic*], sunglasses, and other Hunting Items that had been taken out of [the victim's] truck. [Defendant] stated he had something he wanted to tell us. [Defendant] was taken into an Interview room and [defendant] was asked what he had to tell us. [Defendant] stated he had taken a vehicle from [the] [R]ushville area and Burglarized a house. [Defendant] was then advised of his [*Miranda* rights] and asked what happen[ed]."

Nothing in the report positively rebuts defendant's account of his interaction with the sheriff. Therefore, because defendant's account is not positively rebutted by the record, at the first stage

of postconviction proceedings, we must take it as true. See *Barghouti*, 2013 IL App (1st) 112373, ¶ 26.

¶ 32         Taking defendant's account as true, it is arguable that defendant was subject to custodial interrogation prior to receiving his *Miranda* warnings. It is not unreasonable to believe a person who entered a sheriff's office under the knowledge that law enforcement officers were "looking for him," who is then subjected to direct questioning about a crime, would not feel free to end the questioning and leave. Further, much of the information that would inform the basis for an analysis of whether defendant was subject to custodial interrogation is not included in the record. At first stage postconviction proceedings, we need not make assumptions as to these factors. The trial court drew conclusions about the facts surrounding defendant's encounter with the sheriff which went beyond that necessary for evaluation of defendant's claim. It's analysis "constituted a more probing inquiry than what is contemplated on first-stage review, where dismissal is appropriate only if 'the petition has no arguable basis either in law or in fact.' " *People v. Allen*, 2015 IL 113135, ¶ 45, 32 N.E.3d 615 (quoting *Hodges*, 234 Ill. 2d at 12). From the record, there were legitimate fact questions raised surrounding the nature of the confrontation between defendant and the sheriff in the lobby. During first-stage review, the trial court was supposed to take as true, and even liberally construe, the factual allegations of defendant's petition. See *Barghouti*, 2013 IL App (1st) 112373, ¶ 26.

¶ 33         Further, defendant supported his claims with affidavits calling into question the actual circumstance surrounding defendant's statements, something he was required to do under section 122-2 of the Act (725 ILCS 5/122-2 (West 2018)) and which were sufficient to at least create valid questions of fact. A circuit court at the first stage must determine whether the evidentiary attachments satisfy the purposes of "showing that the petition's allegations are

capable of corroboration and identifying the sources, character, and availability of evidence alleged to support the petition's allegations." *Allen*, 2015 IL 113135, ¶ 34. If defendant had been subject to custodial interrogation without the benefit of *Miranda* warnings, it calls into question the admissibility of defendant's entire confession at the sheriff's office. As is, the record is simply too sparse to make any determinations as to the motives and actions of defendant and the officers. As defendant's claims pertaining to his confession are arguable, it is also therefore at least arguable that counsel's failure to investigate this issue and failure to file a motion to suppress his confession fell below an objective standard of reasonableness.

¶ 34  In making this decision, we want to make clear we are not finding defendant was subject to a custodial interrogation or counsel's conduct fell below an objective standard of reasonableness. These are factual determinations to be made at a later stage when defendant has the benefit of counsel to flesh out his claims and the State has the opportunity to respond. Instead, we are saying that, based on the limited record before us, which contains little information on defendant's interactions with the sheriff's office, it is arguable that there was a fifth amendment violation with regard to defendant's initial encounter with Sheriff Redshaw. Further, the record contains no information as to defense counsel's actions after defendant informed counsel of his concerns about his confession. Where a reasonable counsel would have at least discussed this issue with his client when the client was deciding to plead guilty, and defendant claims no such discussion or action occurred, it is arguable counsel was ineffective.

¶ 35  As for prejudice, when the State presented the factual basis for defendant's plea, the only information implicating defendant was defendant's confession. Without other evidence implicating defendant in the burglary, it is reasonable that he would not have pleaded guilty to residential burglary and would have insisted on going to trial. Therefore, it is arguable defendant

was prejudiced by his counsel's failure to investigate and challenge his confession. As previously noted, to survive dismissal at the first stage of postconviction proceedings, a petition need only state the gist of a constitutional claim, which is a low threshold. See *Hodges*, 234 Ill. 2d at 9. Given that we have found defendant has satisfied this low threshold by presenting the gist of a constitutional claim, we conclude that the trial court erred in dismissing defendant's postconviction petition. We reverse the trial court's summary dismissal at the first stage of postconviction proceedings and remand for second stage postconviction proceedings.

¶ 36                                III. CONCLUSION

¶ 37          For the reasons stated, we reverse the trial court's judgment and remand for second stage postconviction proceedings.

¶ 38          Reversed and remanded.